WILLIAM THORNTON and Others, as Trustees of the Creditors and Stockholders of VAN KEUREN AND THORNTON COMPANY, Plaintiffs, *v.* NETHERLANDS-AMERICAN STEAM NAVIGATION COMPANY (HOLLAND-AMERICA LINE), Defendant.

First Department, June 15, 1917.

Corporations — when indorsee of check drawn by treasurer of corporation payable to his own order is put on inquiry as to treasurer's authority — liability of corporation on check drawn by treasurer payable to his own order — duty of bank having deposit of corporation to inquire as to the authorization of treasurer to draw checks — negligence of corporation in failing to audit canceled checks.

Where the treasurer of a corporation, by a resolution of its board of directors, was " empowered to execute contracts or other obligations, sign or endorse checks, notes or drafts, and otherwise perform the usual duties pertaining to the office of treasurer," and a copy of said resolution was on file with the bank where the corporation had its account, and on May fifth of the same year the treasurer applied at the office of a steamship company for a passage ticket on one of its steamships to sail August thirteenth, for a party of several persons, and made a deposit, and on June fifteenth delivered to the steamship company in payment of the balance for the ticket a check of the corporation for $500 drawn upon its bank by himself as treasurer, payable to his own order and indorsed by him to the order of the steamship company, and said company did not make any inquiry of the corporation as to the business and purpose for which said check was used by its treasurer, further than to make a prompt presentation thereof to the bank upon which it was drawn, and no demand for the return of the money represented by said check was made upon the steamship company until May 16, 1916, said company was put

on inquiry as to the treasurer's authority to negotiate the check in payment of his personal indebtedness, not because it was payable to his own order, but because the circumstances clearly indicated that the transaction was for his personal benefit and because said company participated in the diversion by using the check in its own business and for its profit.

But since the corporation permitted its canceled checks to be returned to the treasurer who drew them, and since if they had been properly audited the diversion would have been discovered in time to enable the company to cancel the ticket, the corporation, its negligence having enabled the dishonest treasurer to perpetrate the fraud, must stand the loss.

A bank is not bound to inquire for the authorization of the treasurer of a corporation to draw the corporation's check to his own order when there is on file with it a resolution of the board of directors of such corporation giving the treasurer the usual general authority to draw and indorse checks.

Where there are any circumstances indicating that a check is being used or is intended to be used for the officer's personal benefit, or where the bank in any way participates in the diversion to its own benefit, the duty of inquiry exists, but the rule should not be unreasonably extended so as to clog business, especially since corporations may easily protect themselves by strictly limiting the authority given to draw and indorse their checks.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 1279 of the Code of Civil Procedure.

*Henry F. Atherton,* for the plaintiffs.

*John A. McManus,* for the defendant.

SHEARN, J.:

The salient agreed facts in this submitted controversy are these: During the year 1910, the Van Keuren & Thornton Company, a domestic corporation, was engaged in the business of buying, selling and converting cotton fabrics, its principal place of business being at 20 Thomas street, borough of Manhattan. The company's treasurer was one Vanderoef, who by resolution of the board of directors was " empowered to execute contracts or other obligations, sign or endorse checks, notes or drafts, and otherwise perform the usual duties pertaining to the office of treasurer." A copy of the resolution was on file with the Corn Exchange Bank of New York city, where the company had its account. On May 5, 1910, Vanderoef applied at the office of the steamship company for a passage ticket from Rotterdam to New York on one of its steamships to sail August 13, 1910, for a Mrs. Johnson

and party of three persons.   At this time he made a deposit of
$100 in cash on account of the purchase price of the ticket,
which was $600.   Subsequently, on May 23, 1910, by a
letter upon which were engraved the words " 20 Thomas
Street," which letter was signed " P. G. Vanderoef," the
steamship line was advised of the names of the persons for
whom the passage was desired.   On June 15, 1910, Vanderoef
delivered to the steamship company in payment of the balance
of the purchase price of the ticket a check of the Van Keuren
& Thornton Company for $500, drawn upon the Corn Exchange
Bank by himself as treasurer, payable to his own order, which
he indorsed to the  order of the steamship company.   On the
same day the check was deposited by the steamship company
to its account in the Produce Exchange Bank, and on June 17,
1910, it was paid by the Corn Exchange Bank out of the funds
of the Van Keuren & Thornton Company.   On August 13,
1910, the steamship line accepted Mrs. Johnson and party as
passengers on its steamship *Nieuw Amsterdam* at Rotterdam
and transported them to New York.   The steamship company
did not make any inquiry of any officer, agent or director of·
the Van Keuren & Thornton Company as to the business and
purpose for which said check was used by Vanderoef further
than to make a prompt presentation thereof to the bank upon
which it was drawn in the usual course.   At the time of the
drawing of the said check Vanderoef was in good standing
in the business community, but in December, 1911, he con-
fessed to the crime of grand larceny of various sums of
money from the Van Keuren & Thornton Company and was
subsequently sentenced to imprisonment for a term of years
in Sing Sing prison.   No demand for the return of the money
represented by this check was made upon the steamship line
until May 16, 1916.                                ·]

Plaintiffs are right in their contention that the defendant
was put on inquiry as to Vanderoef's authority to negotiate
the check in payment of his personal indebtedness; not,
however, because the check was payable to his own order,
but because the circumstances clearly indicated that the trans-
action was for Vanderoef's personal benefit and because the
defendant participated in the diversion by using the check in
its own business and for its profit.   (*Ward* v. *City Trust Co.,*

192 N. Y. 61; *Bischoff* v. *Yorkville Bank*, 218 id. 106.)   Defend-
ant contends, however, that if any duty of inquiry existed, it
sufficiently performed its duty when it presented the check
to the Van Keuren & Thornton Company's bank for collection,
citing *Havana Central R. R. Co.* v. *Knickerbocker Trust Co.*
(198 N. Y. 422).   That case is essentially different, for the
Knickerbocker Trust Company, whose position is claimed
to have been similar to that of this defendant, did not receive
the unauthorized check from the wrongdoer in payment of
his debt to it, a transaction suspicious on its face, unusual
and clearly requiring express authorization.   Furthermore,
the defendant would only be entitled to benefit by such
inquiries as the paying bank was bound to prosecute, and it
cannot be said that a bank is bound to inquire for the authoriza-
tion of the treasurer of a corporation to draw the corporation's
check to his own order when there is on file with the bank a
resolution of the board of directors of such corporation giving
the treasurer the usual general authority to draw and indorse
checks.   A corporation's business might frequently require
checks to be drawn to the order of one of its officers.   Where,
for example, an officer traveled as a purchasing agent and
required large sums of money for such purposes, certified
checks to the order of the officer, readily cashed in any business
community, would be a safe and natural way of carrying money
to be used in the company's business.   It would be an
intolerable burden on business to require an inquiry to be
prosecuted as to the purposes or legitimacy of the transaction
before a bank would be authorized to honor a check, either
by payment or, certification, entirely regular upon its face
and signed by a duly authorized officer.   Where there are any
circumstances indicating that the check is being used or is
intended to be used for the officer's personal benefit, or where
the bank in any way participates in the diversion, to its own
benefit, the duty of inquiry exists, but the rule should not be
unreasonably extended so as to clog business, especially
where it is so easy for corporations to protect themselves
by strictly limiting the authority given to draw and indorse
their checks.   Therefore, the defendant can claim no benefit
by relying upon the possible results of an inquiry which
the paying bank was not obligated to make.

Nevertheless, the facts in this particular case are such as to prevent the plaintiffs from recovering. The passage ticket would never have been issued but for the negligence of the Van Keuren & Thornton Company. It will be noted that while the check was delivered to the defendant on June fifteenth, the passage purchased was for August thirteenth. Although the circumstances were such as to put the defendant on inquiry, it might naturally have assumed that if the transaction were in fact unauthorized, Vanderoef's lack of authority would develop long before the passage ticket would become effective. So it would have, if the Van Keuren & Thornton Company had employed ordinary safeguards in auditing or checking up its treasurer's accounts. This company permitted its canceled checks to be returned to the treasurer who drew them. In such case ordinary business prudence required that some other person should examine them. On or about July 1, 1910, the Van Keuren & Thornton Company's pass book in the Corn Exchange Bank was balanced and the canceled check dated June 15, 1910, was returned to the company. If these checks had been properly audited at any time within seven weeks thereafter, the diversion would have been discovered in time to enable the defendant to cancel the ticket. Apparently no system of audit was employed, for the fact of the diversion was not discovered until December of the following year. Both parties being innocent, this is a proper case to lay the loss on the party whose negligence enabled the dishonest treasurer to perpetrate the fraud. Accordingly the defendant is entitled to judgment dismissing the case upon the merits.

CLARKE, P. J., DOWLING, SMITH and PAGE, JJ., concurred.

Judgment ordered for defendant as stated in opinion. Order to be settled on notice.