OPINION OF THE COURT
Per Curiam.
Judgment entered October 13, 1983 is reversed, with $30 costs; judgment is awarded in favor of the plaintiff in the sum of $2,056 plus interest, costs and disbursements.
*658 Plaintiff Swiss Air seeks recovery of $2,056 representing the difference between the purchase price of two Swiss Air tickets and the value of air travel provided by Swiss Air on account of the alteration of those two tickets. The defendant claims that he purchased the tickets at issue from a friend, one Joseph Laval, for the sum of $750 each. It is undisputed that the tickets were initially purchased by an unidentified individual, from a travel agency, known as Latin American Travel Service, for the sum of $100 each, itinerary Geneva-Basel-Geneva, in the name of Miss J. Delveau. It is further acknowledged that the two tickets were thereafter altered to reflect air passage valued at $1,156 each, itinerary Geneva-New York-Geneva, in the name of Stefan Benn (defendant’s son) and Joachim DeLarive (a friend of defendant’s son). Swiss Air honored the tickets as altered and now seeks to recoup its loss from the defendant.
The court below granted judgment in favor of the defendant on the strength of a defense of equitable estoppel asserted by the defendant (citing Barnard v Campbell, 55 NY 456; Bunge Corp. v Manufacturers Hanover Trust Co., 31 NY2d 223; Dill Enters, v De Leo, 113 Misc 2d 544; and Thornton v Netherlands-American Steam Nav. Co., 178 App Div 604). The trial court predicated its determination in favor of the defendant upon the following mixed findings of fact and law: (1) that plaintiff Swiss Air honored the altered tickets, (2) that the alteration was not detected by Swiss Air until many months after the flights in quéstion, and (3) that Swiss Air may not absolve itself of responsibility for accepting the altered tickets by virtue of deficiencies in its computer system. In this latter regard the court below observed:
“Airlines cannot create a situation which allows travel by an innocent passenger on a particular flight, and then, at a later point, expect to be paid when they discover that as a result of their own oversight, they have improperly permitted passage * * *
“Plaintiff could have prevented the passengers from using altered tickets by maintaining a system capable of confirming which passengers are scheduled for a particular flight. In light of the advanced computer technology available today, this is not an unreasonable burden to place on the plaintiff. The airline should be the one to bear the loss of the difference in airfare, because they are in a better position to both prevent and discover any alterations in their tickets.
“I do not recognize Swiss Air’s reliance on its computer system as a legally cognizable defense. Had Swiss Air been properly *659 equipped with a more sophisticated computer system, it could have promptly discovered the irregularity of the defendant’s ticket. It then would have had a variety of remedies available to it immediately.”
The record, in our view, does not support the conclusion that it was Swiss Air that “created” a situation which allowed the defendant, as an “innocent” party, to utilize bogus tickets, and consequently the authorities relied on by the trial court are inapposite. It was the defendant that struck a bargain with his erstwhile friend, Joseph Laval, for the altered tickets. Defendant did not in any meaningful way attempt to confirm Laval’s authority to sell those tickets. Moreover, defendant’s recollection as to the circumstances under which he procured the two tickets appears tenuous, for on at least two occasions defendant indicated to representatives of the plaintiff that he had obtained the controverted tickets in satisfaction of a gambling debt. Conspicuously absent in the record is any receipt confirming the defendant’s alleged cash payment of $750 to Laval for each of the tickets. Also straining credulity is defendant’s testimony that it was upon delivery of the tickets to defendant’s apartment that Laval for the first time informed defendant that the cost of the tickets would be $750 each and that immediately upon being so informed defendant produced $1,500 cash in hand with which to pay Laval for the tickets.
We also note that the tickets on their face provide: “It is unlawful to purchase or resell this ticket from/to any entity other than the issuing carrier or its authorized agents.” This indorsement upon the tickets fairly alerted the defendant of the need to verify Laval’s authority to sell the tickets, and having failed to do so, he should not be heard to complain that he was misled by Swiss Air.
It is true that the defendant after receiving the tickets from Laval, took them to Swiss Air’s Fifth Avenue office. When queried by his own attorney as to why he took the tickets to the Swiss Air office defendant answered: “Because here were two teenagers on their first transatlantic trip solo, if you will, I didn’t — I wanted to eliminate any possibility of something going wrong. As a member of Swiss Air’s V.I.P. Travel Club, I took the tickets to the Fifth Avenue office and said look, I got these two lads coming over here for the first time alone, could you please see to it that they get help coming through customs on their arrival. Swiss Air’s ticket agent took the tickets, looked at the tickets, confirmed the reservations and said yes, indeed we will because of your Swiss Air travel card, help these two *660 lads get through customs which I might add they did.” Manifestly the defendant in presenting the tickets at the Swiss Air office appears to have been more interested in seeking flight courtesy for his son and his son’s friend than in verifying the validity of the tickets. Although the Swiss Air ticket agent provided defendant with flight confirmation he obviously did so on the basis of the altered tickets presented by the defendant and that confirmation should not be deemed a ratification of the altered tickets.
We do not accept the trial court’s conclusory observation that Swiss Air failed to maintain an adequate computer facility with which to verify tickets presented either for flight confirmation or at airport check-in counters. The record reveals that in conjunction with the initial issuance of the specified tickets the following ticket components were prepared by the Latin American Travel Service: auditors’ coupons, which were forwarded to Swiss Air; travel agents’ coupons, which were maintained by Latin American; and flight coupons, which were given to the unidentified purchaser of the tickets. According to Swiss Air, since flight coupons can be reissued many times before use, the airline does not have the computer capacity to compare the terms of the flight coupon with the terms of the audit coupon when the flight coupon is presented at the airport check-in counter. It is only after the flight, and after the collection of the flight coupon from the passenger, that the flight coupon is forwarded to the appropriate airline offices for comparison with the auditor’s coupon. It was in the context of such a comparison that the alteration of the two tickets in question was discovered, leading to the instant claim against the defendant Gale Benn.
The record is absolutely devoid of testimony, expert or otherwise, suggesting that the procedure and equipment utilized by Latin American Travel Service and Swiss Air in issuing and accepting the controverted tickets deviated from accepted practice in the airline industry. The court below appears to have employed “judicial notice” as a predicate for concluding that Swiss Air’s computer system was inadequate and that Swiss Air was in some sense negligent in failing to ascertain the altered condition of the tickets upon presentation. The capacity of Swiss Air’s computer equipment and the ability of Swiss Air to detect the alteration of specified tickets are not matters which lend themselves to judicial notice.
Having rejected defendant’s defense of equitable estoppel we find the defendant liable — in quasi contract — for the value over and above the original purchase price of the tickets, of the *661 air service provided by Swiss Air upon defendant’s presentation of the altered tickets. All the elements of quasi contract are here present: a benefit conferred upon the defendant by the plaintiff, appreciation by the defendant of such benefit and acceptance and retention by the defendant of such benefit under such circumstances that it would be inequitable for him to retain it without paying the value thereof (Bradkin v Leverton, 26 NY2d 192; Miller v Schloss, 218 NY 400; People ex rel. Dusenbury v Speir, 77 NY 144; Mohegan Colony Assn. v Picone, 61 AD2d 809; Lengel v Lengel, 86 Misc 2d 460). The defendant was unjustly enriched in that he procured and caused to be presented to Swiss Air — on behalf of his son and his son’s friend — the two altered tickets. Failing to detect the alteration, Swiss Air honored the tickets and in so doing provided defendant with services that were not paid for. Upon discovery of the alteration Swiss Air was entitled to recoup from the defendant the value of the services provided because the defendant failed to demonstrate that Swiss Air was in any manner at fault in failing to detect the altered state of the tickets here in question. Since the Civil Court has jurisdiction of causes of action upon quasi contract (Romer v American Export Lines, 202 Misc 814; Pache v Oppenheim, 93 App Div 221; Devery v Winton Motor Carriage Co., 49 Misc 626), the plaintiff is entitled to judgment in the amount claimed.
Hughes, J. P., Riccobono and Parness, JJ., concur.