OPINION OF THE COURT
William H. Keniry, J.
This is an action seeking recovery of the sum of $19,845 *341 allegedly due to the plaintiff as beneficiary under a policy of life insurance issued by the defendant, American International Life Assurance Company of New York (hereinafter American International), on the life of William Lawrence Del Sonno, the plaintiff’s late husband.
The facts underlying this claim are somewhat complex and warrant recitation. William Lawrence Del Sonno (hereinafter Del Sonno) and the plaintiff owned and operated a small custom meat processing business. In 1977, Del Sonno applied for a $210,000 Small Business Administration (S.B.A.) loan through the defendant Taconic Valley Bank to expand operations. The loan was thereafter approved. One of the conditions of the loan required that the business purchase and maintain insurance upon the life of Del Sonno in an amount sufficient to cover the unpaid principal loan balance over the 15-year term of the loan. To fulfill this requirement, Del Sonno contacted local insurance agent Michael S. Lofgren (hereinafter Lofgren). Lofgren advised Del Sonno that a 15-year decreasing term life insurance policy could be purchased from American International for an annual premium of $478. Lofgren was, at the time, an authorized broker of American International.
Del Sonno, in June 1977, filed an application for such insurance with American International through Lofgren. Following an investigation, the application was approved and American International issued a 15-year decreasing term policy in the amount of $210,000 on or about September 1, 1977. The original policy and billing invoice were delivered directly to Lofgren and Lofgren then notified Del Sonno. The annual premium for the policy delivered was $558.60. Del Sonno immediately protested the amount of the premium reminding Lofgren that an original quote of $478 was given to him.
The premium discrepancy was caused by a difference in the type of the life insurance policy originally quoted by Lofgren and the policy subsequently delivered by the insurer. Lofgren’s quotation was based upon a term life insurance policy in the amount of $210,000 which provided for monthly decreasing coverage. The policy issued by American International represented a policy for $210,000 which provided for annual decreasing term coverage.
The premium discrepancy was not immediately rectified. Del Sonno did not pay the $558.60 premium. The S.B.A. loan *342 closing occurred on or about September 19, 1977. The life insurance policy, as part of the loan transaction, was collaterally assigned to the bank. Lofgren, on September 20, 1977, sent a letter to American International which stated, in part, that: "Enclosing for your files the insureds [sic] check for the correct premium of $478.80 as well as a collateral assignment. Upon receipt of a new policy providing monthly decreasing term coverage, I shall obtain the original policy and return it for cancellation.”
Del Sonno thus paid the premium for the monthly decreasing term policy. Shortly thereafter, an original policy numbered 7710563 providing monthly decreasing term coverage was delivered directly by American International to Lofgren. Lofgren then delivered the original policy to Taconic Valley Bank in accordance with the collateral assignment. This monthly decreasing term policy was issued by American International on a preprinted form numbered 5829. In contrast, the annual decreasing term policy previously delivered was issued on a preprinted form numbered 5387.
Del Sonno apparently requested a duplicate copy of the insurance policy for his records and Lofgren contacted the company to obtain one. American International refused to issue a duplicate advising Lofgren to secure a photocopy of the original in the bank’s possession. Lofgren then requested that American International send "a photocopy of the declaration page. A photocopy of the reduction page will suffice”. By letter dated October 27, 1977, the insurer sent "a photocopy of the face sheet of Mr. William DelSonn’s [sic] policy #7710563” to Lofgren. On November 3, 1977, Lofgren sent the following note to Del Sonno: "At long last I have obtained a copy of your life insurance policy. Please note that the reduction schedule is on the reverse side of the face page.”
Based upon the documents submitted to the court and the pretrial testimony, Lofgren either inserted a copy of the revised face sheet page into the original form 5387 policy first issued and sent that incorrect policy to Del Sonno or the form 5387 policy had previously been given to Del Sonno and he himself thereafter inserted the new face sheet into that incorrect form. The resolution of this factual issue is not deemed crucial to the court’s resolution of the merits of these motions. It is significant to note that the payment reduction schedule contained in the form 5387 policy is located on the back of the front cover while the payment schedule contained in the form 5829 policy is located on the last page of the form. The record *343 does establish that the original annual decreasing policy issued on form 5387 was never returned by Lofgren to American International as indicated in Lofgren’s September 20, 1977 letter. Further, there is no proof that American International ever attempted to secure the return of the first policy. It is undisputed that Del Sonno continued to pay an annual premium of $478.80 until his death on February 5, 1981.
At the time of his death, the principal balance of the S.B.A. loan was $190,365.97. The difference between the two different insurance policies then surfaced. According to the original policy on form 5829 in the custody of the bank, the death benefit computed upon the monthly decreasing term was $162,225. However, based upon the original policy on form 5387 in the plaintiff’s possession incorporating an annual decreasing payment schedule, the death benefit would be $182,070. Faced with this discrepancy, American International paid the sum of $162,225 due under the monthly decreasing term policy without prejudice to the plaintiff’s claim that an additional $19,845 was due and owing.
The plaintiff now moves for summary judgment contending that American International is equitably estopped from denying her claim to the balance of the amount due under life insurance policy 7710563 on form 5387. The plaintiff argues that she and her husband reasonably relied upon the incorrect copy of the policy in their possession and that American International or its local representative was responsible for failing to supply a true and correct copy of the in-force policy.
American International opposes the motion and cross-moves for summary judgment dismissing the complaint. The insurer argues that it fulfilled its contractual obligation as a matter of law by honoring the terms of the monthly reduction policy and that it was not legally bound to honor an insurance contract that was never valid; notwithstanding the fact that it was never properly surrendered and that the insured possessed the original policy.
Defendant Taconic Valley Bank has not appeared either in support or in opposition to either motion.
Issue finding rather than issue determination is the court’s threshold inquiry on a motion for summary judgment (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395). Thus, the focus of the court’s inquiry must center around the determination of whether the movant is entitled to judgment as a matter of law or whether a plenary trial is necessary to *344 resolve genuine factual issues which exist (Barr v County of Albany, 50 NY2d 247). To obtain summary judgment, the moving party must establish her cause of action or defense as a matter of law based upon a tender of evidentiary proof in admissible form (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065). Likewise, a party opposing a summary judgment motion must make an evidentiary showing supported by admissible evidence that genuine, triable issues of fact exist (Friends of Animals v Associated Fur Mfrs., supra).
The court has carefully considered the affidavits, deposition testimony and the documents attached as exhibits. For the reasons specified below, the court finds that the plaintiff is entitled to summary judgment based upon the justified reliance of the insured, William L. Del Sonno, upon the policy of insurance in his possession. There is no doubt in the court’s mind that the plaintiff’s husband and American International had contracted for the monthly decreasing term policy calling for an annual premium of $478.80. That original policy was in the possession of the bank on the date of Del Sonno’s death. Although the original policy found in the deceased’s possession was not the actual policy ultimately purchased, the court finds that the actions of American International were sufficient to reasonably induce the decedent to rely upon the erroneous policy. The conclusion is primarily based upon the fact that the face sheet supplied to Del Sonno by American International via its local representative, Lofgren, expressly calls for the incorporation of form 5387 in the schedule of benefits and premiums listed thereon. Although the face sheet in the lower left-hand corner contains the printed words "Form 5829-PI”, there is typewritten on the body of the sheet "Form Number 5387”. Thus, it would not be irrational for an insured to assume that the remaining conditions and terms of the insurance contract were set forth in the preprinted form 5387 which either was delivered to Del Sonno with the new face sheet or which had previously been supplied to him. In this case, the insured previously asked for a copy of the policy. In response to his inquiry, a copy of an erroneous declaration page admittedly prepared by American International was supplied to him via the insurer’s local representative. The declaration page provided to Del Sonno contained three obvious errors when compared to the original face sheet in the bank’s possession. First, the annual premium of $478.80 was erroneously listed as $478. The correct expiration date of September 1, 1992 was erroneously stated as September 1, *345 1982. Finally, the page supplied to Del Sonno stated that form 5387 rather than form 5829 was applicable. Since Del Sonno simultaneously was given or then had in his possession a copy of preprinted form 5387, he could reasonably believe that he was then in possession of a complete copy of the policy in effect.
Under these circumstances, the general requirements for finding an equitable estoppel have been established. Equitable estoppel has been comprehensively defined as: "the principle by which a party is absolutely precluded from denying, or asserting the contrary of, any material fact which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another, who was excusably ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon them thereby, as a consequence reasonably to be anticipated, changing his position in such a way that he would suffer injury if such denial or contrary assertion were allowed.” (57 NY Jur 2d, Estoppel, Ratification, and Waiver, § 13, at 17-18.)
The Court of Appeals has held that an estoppel "rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury” (Metropolitan Life Ins. Co. v Childs Co., 230 NY 285, 292; see also, Triple Cities Constr. Co. v Maryland Cas. Co., 4 NY2d 443). An estoppel need not be based upon an actual intent to mislead or defraud but may arise from a party’s negligence (Thornton v Netherlands-American Steam Nav. Co., 178 App Div 604; 57 NY Jur 2d, Estoppel, Ratification, and Waiver, § 43 et seq.).
In this case, American International prepared an erroneous face sheet with knowledge that the insured had requested a copy of the policy. The incorrect face sheet was delivered to its local representative who then transmitted the face sheet, either alone or with a copy of an inaccurate preprinted form, to the insured. The situation was compounded by the failure of American International to secure the return of the original, albeit rejected, insurance policy. This omission allowed Del Sonno to retain possession of an incorrect policy.
In opposition to the imposition of an estoppel, American argues that Lofgren was acting as an insurance broker and that his negligence in delivering the wrong policy and in failing to secure the return of the wrong policy cannot be imputed to it. Although the record establishes that Lofgren *346 was an insurance broker for and not an agent of American International (see, American Motorists Ins. Co. v Salvatore, 102 AD2d 342), the negligence ascribed to his conduct, i.e., failing to return the original annual decreasing term policy and allegedly mailing the incorrect face sheet either with or without the incorrect preprinted form to Del Sonno, were ministerial acts occasioned on behalf of American International. Lofgren testified that it was a standard business practice for American International to deliver to him all policies issued and that it was his obligation to then deliver the policy to the insured and collect the premium. Thus, to the extent of the activities which give rise to the claim of estoppel, Lofgren can properly be considered as the agent of American International (Mord v Hartford Acc. & Indem. Co., 245 NY 279; Saulmack Realty Corp. v Kipp, 17 NYS2d 760; 29 NY Jur, Insurance, § 426).
Upon receipt of what he believed to be a complete copy of the policy he purchased, Del Sonno had no reason to inquire any further. He. had no reason to then know that the bank had a different policy. Del Sonno, thus,, reasonably relied upon the erroneous documents supplied to him. Accordingly, the defendant American International is required to fulfill its obligations under the policy of insurance that remained in the plaintiff’s husband’s possession. The insurer is equitably es-topped from challenging the terms of the policy of insurance represented by form 5387.
The motion of the plaintiff is hereby granted and the cross motion of the defendant American International is denied.