THE PEOPLE'S TRUST COMPANY, Appellant, *v.* JOHN W. SMITH et al., Respondents.

Estoppel — delivery of bond and mortgage, by owner, to nephew bearing same name not such negligence as to estop owner from denying title of nephew's assignee.

1. To make out an estoppel it is not enough to show that the owner was careless. He must have been careless in respect to some duty owing to the plaintiff or to the public.

2. Where a bond and mortgage were not accompanied by any blank form of transfer, signed by the true owner and there was nothing about them to indicate that any transfer was contemplated, their delivery to a nephew of the same name, by whom they were wrongfully assigned to a third party, was not a transaction that made care and diligence a duty. The owner was not at fault for failing to protect himself or the public against the consequences of a possible crime of forgery.

3. The rules of estoppel that govern the assignment of stock certificates when indorsed in blank are not applicable, there being little analogy between a commercial document with an indorsement which, by commercial usage, is an invitation to purchase it, and a bond and mortgage unaccompanied by any instrument of transfer.

*People's Trust Co.* v. *Smith*, 155 App. Div. 921, affirmed.

(Argued June 8, 1915; decided July 13, 1915.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered March 3, 1913, affirming a judgment in favor of

defendant entered upon a dismissal of the complaint by the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George W. Wingate* for appellant. The delivery of the bond and mortgage by the owner to his nephew, a person of identically the same name, vested in such nephew the apparent ownership thereof so as to estop the actual owner from questioning the title thereto of any person who purchased the same for a valuable consideration from the latter on the faith of such apparent ownership. (*People* v. *Barker*, 152 N. Y. 417; *McNeil* v. *Tenth Nat. Bank*, 46 N. Y. 325; *Moore* v. *Met. Nat. Bank*, 55 N. Y. 41; 2 Cook on Corp. § 473; *Matter of Mills*, 125 App. Div. 730; *Critten* v. *Chemical National Bank*, 171 N. Y. 219; *Crawford* v. *West Side Bank*, 100 N. Y. 50; *Knox* v. *Eden Musee Co.*, 148 N. Y. 451; *Shipman* v. *Bank of N. Y.*, 126 N. Y. 327; *Muller* v. *Pondir*, 55 N. Y. 325; *Bank of Monongahela* v. *Weston*, 172 N. Y. 259; *McWilliams* v. *Mason*, 31 N. Y. 298; *Henken* v. *Schwicker*, 174 N. Y. 298; *Yeomans* v. *McClenahan*, 190 N. Y. 121.)

*John Mulholland* and *John H. Rogan* for respondents. The universal and fundamental principle of our law of personal property is that no man can be divested of his property without his own consent, and consequently, that even a *bona fide* purchaser from a person in the possession of property, who has no title to it and no authority whatever from the owner to sell or dispose of it, cannot acquire any title against the true proprietor. (*Barnett* v. *Walker* 39 Misc. Rep. 323; *Nahe* v. *Bauer*, 211 N. Y. 511.)

CARDOZO, J. The defendants Smith delivered to the defendant George F. Stainton, described in the record as George F. Stainton, No. 1, a bond and mortgage to

secure a debt of $3,000. The mortgagee had a nephew of the same name, who is a member of the bar. He is described in the record as George F. Stainton, No. 2. The uncle placed the bond and mortgage, with other papers, in a separate bundle, and left them, solely for safekeeping, in the safe in the nephew's office. The nephew purloined the bond and mortgage, and attempted to assign them to the plaintiff, The People's Trust Company. He executed, in his own handwriting, a document in the form of an assignment, and on that security obtained from the plaintiff a loan of $2,000. The payment of the loan was guaranteed by the defendant Ward. The bond and mortgage were delivered to the plaintiff together with the assignment. Stainton, No. 1, had no knowledge of the transaction. His good faith is conceded. The good faith of the plaintiff and of Ward, the guarantor, is also conceded. The question to be determined is the incidence of the loss.

The trial judge held that Stainton, No. 1, had intrusted the custody of the bond and mortgage to Stainton, No. 2, and had estopped himself, because of the identity of their names, from denying the title of the custodian. The estoppel was held to be effective, however, only to the extent necessary to save the trust company from loss. The trust company had a remedy against the guarantor, Ward, who was found to be amply solvent. The trial judge held, therefore, that the enforcement of the mortgage was unnecessary for its protection, and on that ground gave judgment dismissing the complaint. The Appellate Division affirmed without opinion.

We think the dismissal of the complaint was proper, but we place our decision on other grounds than those that controlled the judgment in the court below. In our view, Stainton, No. 1, has done nothing that estops him from asserting his ownership of the bond and mortgage. It is conceded that this would be true if the uncle and nephew had borne different names. We think it does

not cease to be true because they bear the same name. An owner who intends to put the title in the name of another rather than in his own name, may lose his ownership by estoppel (*Moore* v. *Met. Nat. Bank*, 55 N. Y. 41). But no such case is before us here. This owner never intended anything of the kind. The name George F. Stainton as used in this bond and mortgage was not intended to be the symbol of any one except himself (*First N. Bank* v. *Am. Ex. Nat. Bank*, 170 N. Y. 88, 90; *Graves* v. *Am. Ex. Bank*, 17 N. Y. 205; *Shipman* v. *Bank of State of New York*, 126 N. Y. 318, 330; *Seaboard Nat. Bank* v. *Bank of America*, 193 N. Y. 26). There was no purpose to clothe the custodian with the indicia of ownership. Estoppel, therefore, cannot be built in this case upon any representation that was *intended* by the true owner. It must be built, if at all, upon the owner's negligence. To make out an estoppel on that ground, it is not enough to show that the owner was careless. He must have been careless in respect of some duty owing to the plaintiff or the public (*Knox* v. *Eden Musee Am. Co.*, 148 N. Y. 441, 462; *Swan* v. *N. B. Australasian Co.*, 2 H. & C. 181). Neither of these elements is present in the case at hand.

The bond and mortgage were not accompanied by any blank form of transfer, signed by the true owner. There was nothing about them to indicate that any transfer was contemplated. They were the expression of a static condition, of a "right at rest" rather than a "right in motion" (Holland, Elements of Jurisprudence, p. 132). It was possible, of course, that the custodian might personate the mortgagee and forge an assignment. The same thing would have been possible, though perhaps more difficult, if the names had been different. It is not to be overlooked that the nephew's act, though he used his own name, was none the less a forgery (*Graves* v. *Am. Ex. Bank*, 17 N. Y. 205; *People* v. *Peacock*, 6 Cow. 72; *Third Nat. Bank* v. *Merchants' Nat. Bank*, 76 Hun,

475, 478; Penal Law, section 883). The owner was not at fault for failing to protect himself or the public against the consequences of such a crime. Many cases, not to be distinguished in principle, sustain that conclusion. *Shepard & Morse Lumber Co.* v. *Eldridge* (171 Mass. 516, 528) was a case where the holder of an unindorsed check left it with a clerk who, if care had been used, would have been known to be dishonest. The clerk forged the indorsement. The court held that the employer had not lost his remedy through negligence. "He has the right to assume that his clerk will not commit a crime, and to rest upon the presumption that he has not stolen or forged, and will not do so, and he is under no legal obligation, either to the drawer of the check or to the public, to see to it that the check is not put in circulation with a forged indorsement" (*Shepard & Morse Lumber Co.* v. *Eldridge, supra,* at p. 528; to the same effect, *Varney* v. *Curtis,* 213 Mass. 309, 312). Faith in the honesty of trusted friends and relatives is seldom negligence. If circumstances may make it negligence, this case does not show them. We may say, with BOVILL, Ch. J., in *Société Générale* v. *Metropolitan Bank, Ltd.* (27 L. T. 849, 856): "Persons are not to be supposed to commit forgery, and the protection against such a crime is the law of the land, and not the vigilance of parties in excluding all possibility of committing it," and with BRETT, J., in the same case (p. 858): "There is no duty on any one to suppose that those, against whose character there is no imputation, will commit forgery whenever the opportunity arises." (See, also, *Knox* v. *Eden Musee Am. Co., supra,* at p. 460; *Scholfield* v. *Earl of Londesborough,* L. R. [A. C. 1896] 514; *Baxendale* v. *Bennett,* L. R. [3 Q. B. D.] 525, 530; *Colonial Bank* v. *Marshall,* L. R. [A. C. 1906] 559; *Longman* v. *Bath Electric Tramways, Ltd.,* L. R. [1 Ch. 1905] 646; *Smith* v. *Prosser,* L. R. [2 K. B. 1907] 735, 746.)

We think, therefore, that the owner was not negligent in leaving his bond and mortgage with a nephew of the same

name.    But if there was any negligence, the transaction
was not one that made care and diligence a duty.    This
court in *Knox* v. *Eden Musee Am. Co.* (p. 462 *supra*)
adopted the words of BLACKBURN, J., in *Swan* v. *N. B.
Australasian Co.* (2 H. & C. 182): "The neglect must be
in the transaction itself, and be the proximate cause of
leading the party into the mistake; and also, as I think,
that it must be the neglect of some duty that is owing to
the person led into that belief, or, what comes to the same
thing, to the general public of whom the person is one,
and not merely neglect of what would be prudent in
respect to the party himself, or even of some duty owing
to third persons, with whom those seeking to set up the
estoppel are not privy."    The nature of this transaction
did not charge the owner with any duty to the public
(*Varney* v. *Curtis*, 213 Mass. 309, 312).    It is true, of
course, in a broad sense that by intrusting his bond and
mortgage to the nephew he made possible the fraud.
That would be equally true if he had intrusted the nephew
with the custody of diamonds.    Indeed, the wrongful sale
of diamonds, passing, as they do, from hand to hand, is
probably the easier crime and one more readily to be fore-
seen.    But the mere possession of a chattel with the per-
mission of the owner does not enable the possessor to
transfer a title by estoppel.    What is true of a chattel is
true equally of things in action (*Varney* v. *Curtis*, *supra ;
Northern Counties, etc., Fire Ins. Co.* v. *Whipp*, L. R.
[26 Ch. D.] 482, 493).    The bond and mortgage were not
delivered to the agent to be dealt with or disposed of;
they were delivered for safekeeping.    They were not
delivered in a form which involved a representation to
the public that any transfer was in view.    A transfer·
was not invited; it was not authorized; and it could be
accomplished only through a crime.    An owner does not
forfeit his ownership for failing to take good care of a
bond and mortgage any more than he forfeits it for
failing to take good care of his watch.

We are asked to apply to this case the rules of estoppel that govern the assignment of stock certificates (*McNeil v. Tenth Nat. Bank*, 46 N. Y. 325), and some other commercial documents (*Bank of Batavia v. N. Y., L. E. & W. R. R. Co.*, 106 N. Y. 195, 199; *Bank of N. Y. N. B. Assn. v. Am. D. & T. Co.*, 143 N. Y. 559; *Coventry v. G. E. Ry. Co.*, L. R. [11 Q. B. D.] 776), when indorsed in blank. The supposed analogy is deceptive. "A blank indorsement of such an instrument signifies that some person is expected to have the right to fill in the blank" (*Scollans v. Rollins*, 179 Mass. 346, 352). The owner who intrusts to another a stock certificate thus indorsed has given currency to 'an instrument which connotes by its very form a contemplated transfer. In such circumstances, if the agent proves to be dishonest, the owner must bear the loss (*Nat. Safe Dep. S. & T. Co. v. Hibbs*, 229 U. S. 391; *Union Trust Co. of Rochester v. Oliver*, 214 N. Y. 517; *McNeil v. Tenth Nat. Bank, supra*). But there is no such implication in the delivery of a bond and mortgage. The suggestion of a future transfer is not immanent in the transaction. It is no more immanent in the delivery of a bond and mortgage than in the delivery of a horse. The law of stock certificates has been developed in view of their character as commercial instruments, designed by their very form, when indorsed in blank, to be freely accepted in the market (*Bank v. Lanier*, 11 Wall. 369, 377; *Nat. S. D. S. & T. Co. v. Hibbs, supra ; Am. Ex. Nat. Bank v. Woodlawn Cemetery*, 194 N. Y. 116). They are issued in the expectation that they will be "used in the ordinary channels of business, and be relied upon as evidence of ownership or security for advances." Those thus trusting to them and affected by them "are not accidentally injured," but have done what those who issued the certificates "had every reason to expect" (*Bank of Batavia v. N. Y., L. E. & W. R. R. Co., supra*). There is little analogy between a commercial document with an indorsement which, by commercial usage, is an invitation to pur-

chase it, and a bond and mortgage unaccompanied by any instrument of transfer (*Rapps* v. *Gottlieb,* 142 N. Y. 164).

Our conclusion is that the title of the elder Stainton has never been divested.

The judgment should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., WERNER, HISCOCK, CHASE, COLLIN and MILLER, JJ., concur.

Judgment affirmed.