Burke, J.
This conversion action has its genesis in the notorious “ salad oil scandal” of the early 1960’s. Plaintiff-appellant Bunge Corporation (hereafter Bunge) appeals from an order of the Appellate Division, First Department, which modified the judgment of the Supreme Court, New York County and dismissed the complaint. The Supreme Court judgment had awarded Bunge the sum of $4,484,151.81.
At issue is who is to bear the loss of three cashier’s checks (official checks) totaling $3,040,386.60. The checks were issued by defendant Manufacturers Hanover Trust Company (hereafter Manufacturers) at the request of its correspondent bank, First National Bank of North Bergen (hereafter North Bergen). North Bergen advised Manufacturers that the checks were being utilized for bid purposes and that it was entirely possible that they would be returned for either one of two reasons: (1) the bid was not accepted; (2) the check was drawn in the wrong amount. The checks in suit, dated November 1 and November 13, 1963, were made payable to Bunge and were delivered by Manufacturers to an employee of the Allied Crude Vegetable Oil Refining Corporation (hereafter Allied), who occupied a desk in Bunge’s office. The Allied messenger returned the official checks to Manufacturers unused and without Bunge’s indorsement. Thereupon, North Bergen’s account was recredited. What transpired between the delivery of the checks to Allied and their return to Manufacturers is the crux of this lawsuit.
*227 After delivery to Bunge,* the official checks wound up in the hands of Mr. Caterina, head cashier of Bunge. Caterina, with the aid of the Allied messenger, switched the official checks payable to Bunge for ordinary checks also payable to Bunge, and the deposit of the ordinary checks was delayed. This activity occurred a number of times (the checks were part of a series of 12 checks dated between October 17-November 13, 1963) but, the ordinary checks which were exchanged for the checks in suit were returned to Bunge for insufficient funds due to Allied’s intervening bankruptcy.
Bunge commenced the instant action on the theory that Manufacturers converted the official checks. Manufacturers denied that Caterina was without authority to switch the checks and set up the following affirmative defenses: Bunge’s negligence in allowing the checks to be returned to Manufacturers; Bunge’s knowledge of the nondeposit of the official checks and the check switching; estoppel and finally, the illegality of the underlying transactions. The affirmative defense of negligence was struck as insufficient (Bunge v. Manufacturers Hanover Trust Co., 28 A D 2d 842).
At the trial, Manufacturers adduced evidence tending to show that Bunge was profiting handsomely at Allied’s expense as Allied was selling vegetable oil below cost and, as a result, Allied was in a precarious financial position. There was testimony from a Bunge officer that Bunge knew Allied was selling oil it didn’t possess and when an inspection of the Allied tanks was made, it was conducted by an inspector designated by Allied. Bunge requested Allied to change the warehouse receipts and to get American Express receipts and also requested that a major New York bank be brought in on the dealings. Additionally, Manufacturers established that Oaterina, in his role as head cashier, issued daily cash report summaries which were delivered to various Bunge officers. The records indicated the total daily deposits by Bunge in its various banks and did not evidence that deposit was by official check. This, in spite of the fact that the checks *228 in suit were the 9th, 10th and 12th checks issued by Manufacturers after Bunge’s request to Allied that payment be made by official, not ordinary checks. Records from other Bunge departments pointed toward a delayed deposit routine. Manufacturers adduced this evidence to support its defenses of knowledge and of the underlying illegality of the transactions.
The dispositive issue, however, in our opinion, is whether under the doctrine of equitable estoppel, Bunge should be estopped from maintaining this action against Manufacturers. Essentially, the nub of this issue is whether Bunge should be barred on the basis that its employee was the chief culprit in switching the checks. The trial court viewed this as merely another attempt to raise the defense of negligence and summarily dismissed it. The Appellate Division, two Justices dissenting, dismissed the complaint and held that the doctrine of equitable estoppel was applicable to the circumstances presented in the instant case.
The order of the Appellate Division is affirmed and the complaint dismissed.
The primary ground for dismissing the complaint is the application of the doctrine of equitable estoppel. Simply stated, the doctrine is “ that where one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss, must sustain it”. (National Safe Deposit Co. v. Hibbs, 229 U. S. 391, 394.) It must be pointed out that official checks which are negotiable instruments (Negotiable Instruments Law, § 20; Uniform Commercial Code, § 3-104; Bobrick v. Second Nat. Bank, 175 App. Div. 550, affd. 224 N. Y. 637) are freely returnable to the issuing bank when in the hands of the remitter. The consequences of an official check being in the hands of its remitter are important as Bunge contends that Caterina was a thief and, therefore, could not pass good title. (See, e.g., Hartford Acc. & Ind. Co. v. Walston & Co., 21 N Y 2d 219, 221, adhered to on rearg. 22 N Y 2d 672.) Manufacturers asserts that under applicable case law, Caterina merely diverted the official checks, and even assuming Bunge’s innocence and lack of knowledge, Bunge must bear the loss. We *229 find Manufacturer’s contention persuasive and invoke the doctrine of equitable estoppel to estop Bunge..
The doctrine finds expression in National Safe Deposit Co. v. Hibbs (229 U. S. 391, supra) wherein plaintiff’s employee took stock certificates which had been indorsed and belonged to the bank as security and delivered them to a broker who, in turn, sold them to a third party. The form that the certificates were in (assigned in blank and attested) provided evidence of ownership and authority to sell. The plaintiff bank sued the defendant broker on the theory that when an owner of property has lost it by a fraudulent act of another, the owner’s right to the property transcends that of an innocent third person’s right to the property. The Supreme Court found this to be a classic case for the application of equitable estoppel holding that ‘‘ the principles which underlie equitable estoppel place the loss upon him whose misplaced confidence has made the wrong possible.” (Id., at p. 397. See Russell v. American Bell Tel. Co., 180 Mass. 467 [Holmes, J.].)
Bunge contends that the doctrine is inapplicable to the instant situation, claiming that Caterina could not transfer title to the checks in their unindorsed form. This contention overlooks the fact that official checks in the hands of the remitter are freely returnable. Cases relied upon by Bunge can be distinguished.
In People v. Bank of North Amer. (75 N. Y. 547) plaintiff sued defendant in conversion for 10 drafts payable to the State Treasurer whose indorsement was necessary for the transfer of the drafts. Two of the 10 drafts were indorsed in blank by the deputy treasurer (who had the requisite authority) and were delivered to an employee of the plaintiff with instructions to deposit the drafts. The employee filled up the blanks in the indorsements, delivered them to a private banking firm from whom defendant ultimately took them. The issue was whether the plaintiff could recover on the two drafts and it was held that it could not since it had entrusted negotiable paper to its agent, who thereafter fraudulently diverted the paper. Analogously, Bunge entrusted the official checks to Caterina, who diverted them to Allied, in whose hands the checks were freely returnable. Ho forgery or *230 unauthorized indorsement was necessary under the chain of circumstances in the instant case.
The invocation of the equitable estoppel doctrine is further bolstered by People’s Trust Co. v. Smith (215 N. Y. 488). There, one Stain ton placed his signature on a document purporting to assign a bond and mortgage which belonged to his uncle, who had the identical name as his nephew and who had delivered the bond and mortgage to his nephew for safekeeping. The nephew used the bond and mortgage to obtain a loan from the plaintiff. Our court held (per Cardozo, J.) that the uncle was not negligent in entrusting the bond and mortgage to his nephew: ‘' the mere possession of a chattel with the permission of the owner does not enable the possessor to transfer a title by estoppel.” (id., at p. 493). Smith recognized the rule espoused in National Safe Deposit Co. v. Hibbs (229 U. S. 391, supra) as Judge Cardozo noted that “ [t]he owner who intrusts to another a stock certificate thus indorsed has given currency to an instrument which connotes by its very form a contemplated transfer. In such circumstances, if the agent proves to be dishonest, the owner must bear the loss.” (People’s Trust Co. v. Smith, 215 N. Y. 488, 494, supra.) The doctrine of equitable estoppel has found similar application in situations where an agent was unfaithful (see, e.g., Wilmerding v. Postal Tel.-Cable Co., 118 App. Div. 685, 689, affd. 192 N. Y. 580; Matter of National Sur. Co. [Benenson], 162 Misc. 344).
Following the rationales of Hibbs (229 U. S. 391, supra), Bank of North Amer. (75 N. Y. 547, supra), and Smith (215 N. Y. 488, supra), Bunge, as the one who enabled Caterina to divert the checks, must bear the loss as between it and Manufacturers. The application of this doctrine is dispositive of this action and it alone warrants an affirmance.
One other point need be treated. It is Bunge’s contention that Manufacturers assumed the risk that the official checks had been delivered to Bunge, the payee, and that Bunge was a holder in due course of the checks in suit (see Saale v. Interstate Steel Co., 27 A D 2d 1, affd. 19 N Y 2d 933). Not only is the law of negotiable instruments not applicable in the case at bar, but such a contention overlooks the practical commercial banking practices involved herein. It is generally *231 accepted in banking law that a bank, absent notice of delivery, (and here there was no evidence that the bank had the slightest hint of delivery — the check was in the same state that it was when it left the bank), is permitted to accept official checks back from the remitter on the presumption that the remitter is still the owner of the checks. This principle was recognized by expert testimony, the former New York Superintendent of Banks and by leading banking treatises (see, e.g., Brady, Bank Checks [4th ed., 1969], § 3.5; 5B Michie, Banks and Banking, § 257). Bunge argues that the proximity of the checks and their subsequent return by the Allied messenger on the same day as issued provided Manufacturers with indicia that something was amiss. It must be recalled that Manufacturers was accommodating North Bergen, which requested Manufacturers to issue the checks. As noted previously, Manufacturers was specifically instructed that the checks may be returned unnegotiated for either one of two reasons: (1) Allied’s bid was not accepted or (2) the checks were drawn in the incorrect amount. In view of the explanation of the purpose of the issuance of the checks and the role of Manufacturers as accommodating bank, the return of the checks in close succession by the remitter does not demonstrate Manufacturers’ liability and this argument is not determinative. The loss should fall on the party who made the loss possible — :here, Bunge, as the employer of Caterina.
Since the invocation of the doctrine of equitable estoppel bars the action by Bunge, we do not reach the other issues raised.
Accordingly, the order of the Appellate Division is affirmed and the complaint dismissed.

 The checks were delivered to Bunge in payment for registered warehouse receipts which represented cottonseed and soybean oil and which were surrendered by Bunge upon the receipt pf the checks.