**In re SATTLER'S, INC., Debtor.**

**Dorothy EISENBERG, Trustee of the Estate of Sattler's, Inc., Plaintiff,**

v.

**The BANK OF NEW YORK, Defendant.**

**Bankruptcy No. 82 B 10157 (TLB).
Adv. No. 84–6177A.**

United States Bankruptcy Court,
S.D. New York.

May 1, 1987.

Shaw, Goldman, Licitra, Levine & Weinberg, P.C. by Marc A. Pergament, Garden City, N.Y., for trustee.

Emmet, Marvin & Martin by Edward P. Zujkowski, New York City, for The Bank of New York.

## MOTION TO AMEND COMPLAINT

TINA L. BROZMAN, Bankruptcy Judge.

Before this court is a motion by the chapter 7 trustee to amend her complaint filed in an adversary proceeding instituted against the Bank of New York ("BONY"). For the reasons discussed below, we grant the motion in part and deny it in part.

## I.

For purposes of this motion, the allegations of the proposed amended complaint are taken as true.

Sattler's, Inc. ("Sattler's") operated department stores in upstate New York and New England. On January 23, 1982 it filed a voluntary petition under chapter 11 of the Bankruptcy Code ("Code"). Thereafter, on July 9, 1983, the case was converted to chapter 7 and Dorothy Eisenberg was appointed trustee ("Trustee").

In her complaint commencing this adversary proceeding, the Trustee alleges that prior to bankruptcy, BONY financed Sattler's purchase of fixtures and furnishings for one of the upstate New York stores. To facilitate the purchase, the parties entered into a number of agreements including fixture loan and fixture lease agreements pursuant to which BONY took back a security interest in the fixtures and furnishings. Certain principals of the debtor personally guaranteed Sattler's repayment of the loan.

After bankruptcy, and without court approval, Sattler's made some payments to BONY part of which were applied by BONY to amortization of the loan rather than to use and occupancy for the fixtures and furniture pursuant to the lease. In addition and again without court approval,

Sattler's paid approximately $108,000 to BONY at a time when Sattler's principals allegedly knew, or should have known, that the fixtures which were BONY's security would be liquidated and that the proceeds would be turned over to BONY. Presumably this $108,000 was applied to principal or interest under the loan, but the pleading is silent in that regard. The Trustee challenged these post-petition transfers as having been made in violation of Code sections 549 and 550.

BONY answered the complaint and discovery ensued, the fruits of which prompted the Trustee to move to amend her complaint. The proposed amended complaint ("Amended Complaint") pleads the facts in greater detail and contains additional claims.

The Amended Complaint describes a series of banking transactions beginning with the post-petition closing of a Sattler's account at BONY on July 22, 1982 ("Closed Account"). On August 26 and 27, 1982, Sattler's made wire transfers of $155,000 and $41,000, respectively, from its account at Marine Midland Bank to the Closed Account. Because the Closed Account no longer existed, both these sums were placed by BONY in its Central Services Division account ("CSD Account"). BONY's Commercial Loan Department ("CLD") then requested that the total amount, $196,000, be transferred to it. CLD initially applied the funds to Sattler's outstanding loan, but later reversed the transaction. Subsequently, the Loan Collections Department ("LCD") of BONY instructed CLD to transfer the $196,000 to an account maintained at BONY in the names of four individuals. Although the proposed amended complaint does not identify the individuals, they appear to have been the principals of the debtor ("Principals").[1]

It is further alleged that on November 12, 1982, David Shipson ("Shipson"), a loan officer of BONY, acting upon instruction

---

1. The individuals named are Wallace Plappinger, Allan Plappinger, Mervyn Platt and Gerald Nathanson. *See* Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Amend Complaint at page 3, which identifies them as Sattler's principals.

from Plappinger, Plappinger & Platt (which may be a partnership but is not identified in the pleading or in the motion papers), wire transferred $80,000 from BONY's CLD general ledger to First National State Bank-Edison and established, at BONY, a "suspense receivable" for that amount. No account was debited at BONY for the $80,000. The $80,000 was covered by a $30,000 withdrawal from the Principals' savings account and a $56,000 transfer from Sattler's account at Marine Midland Bank. Both sums were placed, pursuant to Shipson's instructions, in the suspense receivable account. When the suspense receivable account was cleared on February 1, 1983, the $6,000 excess was returned to the Principals.

Finally, the Trustee alleges that on December 16, 1982, $28,000 of Sattler's funds was transferred without court approval from Marine Midland Bank to BONY to the attention of Shipson. Upon receipt at BONY, the money was placed in the general ledger account at CLD. Four days later BONY withdrew the money from CLD and applied it to Sattler's loan.

Based upon those transactions, the Trustee wishes to assert eight claims for relief—three claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") charging BONY with bankruptcy fraud, wire fraud, mail fraud and conspiracy; one claim for fraud and deceit; one claim for conversion; one claim for bankruptcy and state fraudulent transfers; one claim for punitive damages; and one claim for post-petition transfers.[2]

BONY opposes the Trustee's motion asserting lack of jurisdiction over the RICO claims and failure to state any claim upon which relief can be granted. Accordingly, BONY also urges that no punitive damages can be awarded.

## II.

We begin by rejecting defendant's argument that the three proposed RICO claims should be disallowed because this court lacks jurisdiction to entertain them under 28 U.S.C. § 157(d). Pursuant to 28 U.S.C. § 157(a) and the Order of the United States District Court for the Southern District of New York, Acting Chief Judge Robert S. Ward, dated July 10, 1984, all bankruptcy cases and proceedings are referred to the bankruptcy court. Accordingly, this proceeding is properly here.

Section 157(d) of title 28, upon which defendant relies, sets the standard for determining when the district court has discretion or is mandated to withdraw its reference of a case or proceeding. That determination is to be made either on timely motion of a party or on the district court's own motion. 28 U.S.C. § 157(d). No such motion, which is properly addressed to the district court, has been made. *See, e.g., In re Oceanquest Feeder Service, Inc.*, 56 B.R. 715, 720 (Bankr.D. Conn.1986); *First Landmark Development Corporation v. City of Pinellas Park (In re First Landmark Development Corp.)*, 51 B.R. 25, 27 (Bankr.M.D.Fla. 1985); *Ram Construction Company, Inc. v. Port Authority*, 49 B.R. 363 (W.D.Pa. 1985).[3] Notwithstanding that any motion to withdraw the reference should be presented to the district court, we are empowered to determine the sufficiency of the pleadings and, indeed, should do so, so as to avoid swamping the district court with

---

**2.** The post-petition transfer claim alleges that $28,000, rather than $280,000, was transferred without court approval. *See* ¶¶ 82 and 85 of the Amended Complaint. This would appear to be a typographical error given that the claim for relief also alleges that multiple unauthorized payments were made over a period of six months; the $28,000 transfer was a single payment.

**3.** We recognize that section 157 does not spell out which court should entertain the withdrawal motion. But the courts cited in the text have determined that the district court is the proper forum and the withdrawal motions arising in bankruptcy cases in this district were filed in the district court. *See, e.g., Lesser v. A–Z Associates (In re Lion Capital)*, 63 B.R. 199 (S.D.N.Y. 1985); *United States v. Johns-Manville Corporation (In re Johns-Manville)*, 63 B.R. 600 (S.D.N.Y.1986); *Interconnect Telephone Services, Inc. v. Farren*, 59 B.R. 397 (S.D.N.Y.1986). Further, Rule 5011(a) of the proposed amendments to the Federal Rules of Bankruptcy Procedure mandates that a motion to withdraw the reference shall be heard by a district judge.

motions to withdraw the reference pegged to allegations in deficient pleadings. *See, e.g., Lesser v. A–Z Associates (In re Lion Capital Group)*, 44 B.R. 690, 694–95 (Bankr.S.D.N.Y.1984).[4]

## III.

■ With this aside, we proceed to scrutinize the Amended Complaint. Although amendments to complaints should be freely permitted when justice so requires, *see* Fed.R.Civ.P. 15(a); *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *S.S. Silberblatt, Inc. v. East Harlem Pilot Block-Building 1 Housing Development Fund Company, Inc.*, 608 F.2d 28, 41 (2d Cir.1979), it would be an exercise in futility to allow an amendment when the new complaint would not survive a motion to dismiss. *See* J. Moore, 3 *Moore's Federal Practice* ¶ 1115.08[4] (2d ed. 1985); *Freeman v. Marine Midland Bank*, 494 F.2d 1334, 1338 (2d Cir.1974); *Vibrant Sales, Inc. v. New Body Boutique, Inc.*, 105 F.R.D. 553 (S.D.N.Y.1985). Thus, we must determine whether the Amended Complaint could survive such a motion.[5]

### The RICO Claims

The elements required to plead a RICO claim under 18 U.S.C. § 1962(c) are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (footnote omitted); *see also Cullen v. Margiotta*, 811 F.2d 698, 712–13 (2d Cir.1987). In urging that the Amended Complaint would not survive a motion to dismiss, BONY asserts that the Trustee fails to plead 1) the existence of an enterprise, 2) a pattern of racketeering activity and 3) with particularity, two or more predicate acts.

### (i) Enterprise

■ An "enterprise" is statutorily defined to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." One type of enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). The enterprise is proved "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.* It is also settled that this circuit requires, under section 1962(c) (which sets forth that which is prohibited activity), that the enterprise be a continuing operation and that the acts of that enterprise be related to the common purpose. *United States v. Ianniello*, 808 F.2d 184, 191 (2d Cir.1986), pet. for cert. filed March 27, 1987; *see Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 21–22 (2d Cir. 1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *United States v. Mazzei*, 700 F.2d 85, 89 (2d Cir.), *cert. denied*, 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983).

■ The allegations of the Amended Complaint taken as a whole plead that Shipson, other BONY agents and the Principals operated together in a scheme which resulted in defrauding the bankrupt estate through the various money transfers alleged. Through these allegations, we may permissibly find an enterprise. As Judge Kaufman stated in *United States v. Bagaric*, 706 F.2d 42, 56 (2d Cir.1983), *cert. denied*, 464 U.S. 840, 917, 104 S.Ct. 133, 134, 283, 78 L.Ed.2d 128, 261 (1983), "it is logi-

---

**4.** As originally filed, the action seeking recovery of unauthorized post-petition transfers is indisputably core under 11 U.S.C. § 157(b)(2)(A) and (O). Thus, we have the power to determine whether the pleadings should be amended to include claims which could expand the action to be a non-core, related one.

**5.** In determining a motion to dismiss, the task before the court is a limited one, determining not whether a plaintiff will ultimately prevail but, rather, whether the claimant is entitled to offer evidence to support his claims. The allegations in the complaint should be construed in favor of the pleader, *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and all of the well pleaded allegations of the complaint are treated as true. *Miree v. DeKalb County, Georgia*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492–93 n. 2, 53 L.Ed.2d 557 (1977).

cal to characterize any associative group in terms of what it does, rather than by abstract analysis of its structure." *Accord In re Gas Reclamation, Inc. Securities Litigation,* 659 F.Supp. 493, 519 (S.D.N.Y. 1987).

The alleged scheme was carried out between August 26, 1982 and February 1, 1983. The courts in this circuit have found that organizations of finite life may satisfy the "ongoing" element of an enterprise. *See, e.g., United States v. Mazzei, supra,* 700 F.2d 85 (persons associated to fix college basketball games for one season); *United States v. Errico,* 635 F.2d 152 (2d Cir.), *cert. denied,* 453 U.S. 911, 101 S.Ct. 3142, 69 L.Ed.2d 994 (1981) (persons joined to fix horse races for less than 8 months); *Crummere v. Brown,* 85 Civ. 1376, slip. op. (S.D.N.Y. April 3, 1986) (Sweet, J.) [Available on WESTLAW, DCT database] (available on Lexis) (two stockbrokers defrauded an investor for three weeks).

■ The defendant also claims that the Amended Complaint impermissibly alleges that BONY is both a "person" who committed one or more predicate acts and part of the "enterprise" itself. The enterprise alleged consists of BONY, "its agents and other individuals," including two of the Principals (see ¶ 44 of the Amended Complaint). BONY, as but one member of the enterprise, is alleged to have committed the predicate acts. Our circuit court of appeals has only just put to bed the argument that the "person" committing the predicate acts cannot be a member of the "enterprise."

Indeed, the very terms of § 1962(c) appear to envision that the same entity may be both the RICO "person" and a member of the "enterprise," for the section speaks of a "person ... associated with any enterprise." Thus, though we rejected in *Bennett [v. United States Trust Co.,* 770 F.2d 308 (2d Cir.1985), *cert. denied* __ U.S. __, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986)] the notion that an entity may be deemed "associated with" only itself, there is neither a conceptual nor a doctrinal difficulty in positing an entity associated with a group of which it is but a part.

*Cullen v. Margiotta,* 811 F.2d 698, 730 (2d Cir.1987) (ellipsis in original). Accordingly, we find the Trustee has adequately alleged an enterprise.

(ii) *Predicate Acts*

■ Although the Amended Complaint alleges a series of transactions which resulted in depletion of the debtor's estate by some $280,000, the pleading falls short of describing with particularity the bankruptcy, wire and mail fraud. To be viable, a complaint alleging RICO violations must contain facts which would, if proved, constitute acts indictable under the statutes listed in 18 U.S.C. § 1961(1). And, "the pleading of predicate acts for a RICO claim must meet the particularity requirements of Rule 9(b), Fed.R.Civ.P., where the acts are based in fraud." *Gregoris Motors v. Nissan Motor Corporation,* 630 F.Supp. 902, 912 (E.D.N.Y.1986); *accord, First Federal Savings and Loan Association v. Oppenheim, Appel, Dixon & Co.,* 629 F.Supp. 427 (S.D.N.Y.1986); *Rich-Taubman Associates v. Stamford Restaurant Operating Co., Inc.,* 587 F.Supp. 875 (S.D.N.Y.1984).

As to the alleged acts of mail fraud, nowhere in the Amended Complaint does the Trustee allege that the enterprise made use of the mails to perpetuate a fraud. The Amended Complaint alleges only that transfers of funds were accomplished through the "use of the mail and/or wire services." The Trustee also alleges generally that "the mails were used in connection with and in furtherance of other aspects of the ... enterprise...." General allegations as these, however, are insufficient to meet the particularity requirements of Fed.R.Civ.P. 9(b). *See First Federal, supra,* 629 F.Supp. at 444; *Gregoris Motors, supra* 630 F.Supp. at 913.

■ Nor does the Amended Complaint pass muster with respect to the allegations of wire fraud. To plead an indictable offense under the wire fraud statute, one must allege the existence of (or intention to devise) a scheme or artifice to defraud and the use of interstate wires in furtherance of that fraudulent scheme. 18 U.S.C.

§ 1343; *Tryco Trucking Co. v. Belk Stores Services*, 634 F.Supp. 1327, 1333 (W.D.N.C. 1986); *In re Gas Reclamation, Inc. Securities Litigation, supra,* 659 F.Supp. at 512. A scheme to defraud is a scheme designed "to deprive one of property through fraudulent or deceptive means, such as material misrepresentation (or) concealment...." *Id.* at 512 quoting *Tryco Trucking Co.,* 634 F.Supp. at 1333.

The Amended Complaint leaves us very much in the dark as to what constituted the scheme to defraud. Neither the fraudulent or deceptive means nor the false statements are identified, nor are we told what about them was false and misleading. *See Conan Properties, Inc. v. Mattel, Inc.,* 619 F.Supp. 1167, 1172–73 (S.D.N.Y.1985). Although the allegations taken as a whole charge BONY with misdoings, we cannot say from the Amended Complaint that those alleged misdoings plead wire fraud.[6]

The same is true with respect to allegations which would be sufficient to indict BONY for bankruptcy fraud. 18 U.S.C. § 152 sets out various instances of bankruptcy fraud which, like other RICO violations predicated in fraud, must be pleaded with particularity. *Gregoris Motors,* 630 F.Supp. at 912; *see, e.g., Bankers Trust v. Feldesman,* 648 F.Supp. 17, 23 (S.D.N.Y.1986).[7] Here, the complaint paints a picture of post-petition transfers facilitated by one or more of BONY'S employees. But the pleading of those facts together with general language tracking the RICO statute does not adequately plead acts of bankruptcy fraud.

(iii) *Pattern*

BONY argues that the Trustee has not pleaded that the commission of the alleged predicate acts constitutes a "pattern of racketeering activity." The "pattern" requirement of 18 U.S.C. § 1962 has been the subject of no small controversy whose beginnings are rooted in the much quoted fourteenth footnote in *Sedima.* In dictum, the Supreme Court stated, in relevant part:

> As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern *"requires* at least two acts of racketeering activity," § 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added)....

*Sedima,* 105 S.Ct. 3275, 3285 n. 14.

Taking to heart this footnote, the majority of decisions in this district had held that multiple "episodes," "transactions" or "schemes" in furtherance of a single scheme do not satisfy the RICO pattern requirement. *See Modern Settings Inc. v. Prudential-Bache Securities,* 629 F.Supp. 860 (S.D.N.Y.1986); *Utz v. Correa,* 631 F.Supp. 592 (S.D.N.Y.1986); *Soper v. Simmons International, Ltd.,* 632 F.Supp. 244 (S.D.N.Y.1986); *Frankart Distributors, Inc. v. RMR Advertising,* 632 F.Supp. 1198 (S.D.N.Y.1986); *Richter v. Sudman,* 634 F.Supp. 234 (S.D.N.Y.1986); *Beck v. Manufacturers Hanover Trust,* 645 F.Supp. 675 (S.D.N.Y.) *aff'd on reargument,* 650

---

6. See the discussion, *infra,* of the deficiencies of the Amended Complaint relating to the pleading of fraud.

7. We recognize that the particularity requirements of rule 9(b) were not at issue in *Feldesman,* at least as to the noncorporate defendants, nonetheless the facts are clear that the bankruptcy fraud in that case was alleged adequately. For example, the complaint alleged the existence of a fraudulent conveyance of stock in contemplation of bankruptcy as well as the making of false oaths in the debtor's schedules and the giving of false testimony. *Id.* at 23.

F.Supp. 48 (S.D.N.Y.1986); *Sybedon Corp. v. Mendell,* 646 F.Supp. 937 (S.D.N.Y.1986); *Crummere v. Brown,* 85 Civ. 1376, slip op. (S.D.N.Y. Apr. 3, 1986) (available on Lexis). Declining to follow the majority, Judge Connor of this district did not find the *Sedima* footnote to be a basis for the doctrine which was born from it and instead held "that until Congress indicates otherwise, a pattern of racketeering activity is alleged when a plaintiff claims two or more connected criminal acts listed in § 1961(1)." *Bankers Trust Company v. Feldesman, supra,* 648 F.Supp. at 26; *accord Conan, supra,* 619 F.Supp. at 1170 (recognizing that two isolated acts of racketeering activity do not constitute a pattern but that "when two acts which relate to each other and arise out of the same scheme are alleged, the requirement of pleading a 'pattern of racketeering activity' has been met.")

We need not today debate the merits of the conflicting authority in this district for our circuit court of appeals has recently indicated its agreement with the view espoused in the *Feldesman* and *Conan* cases, *see United States v. Ianniello, supra,* 808 F.2d at 192 n. 15, and has further stated that

> [a]s *Sedima* makes clear, 105 S.Ct. at 3287, any further narrowing of RICO, however appropriate that may be, is a job for Congress, not the courts.

*Id.*

Notwithstanding the above, the post-*Ianniello* decisions are not in complete harmony with respect to the pattern requirement. Many have followed strictly the view articulated in the *Ianniello* footnote. *See, e.g., In re Gas Reclamation, Inc. Securities Litigation, supra; Bistricer v. Bistricer,* No. 85 Civ. 4381, slip op., (E.D.N.Y. Feb. 2, 1987) [Available on WESTLAW, DCT database] (available on Lexis); *City of New York v. Joseph L. Balkan, Inc.,* 656 F.Supp. 536 (E.D.N.Y.1987); *Reiter's Beer*

*Distributor's, Inc. v. Christian Schmidt Brewing Co.,* 657 F.Supp. 136 (E.D.N.Y. 1987).

Others have sought to distinguish *Ianniello.* In one case, Judge Keenan declined to find a pattern, harking back to the "acts in furtherance of a single scheme" theory. He limited the teaching of *Ianniello* to those cases which arise in the context of criminal RICO. Because his was a civil case, he found no pattern. *Shopping Mall Investors, N.V. v. E.G. Frances & Co., Inc.,* No. 84 Civ. 1469, slip op. at 7–8 & fn. (S.D.N.Y. Jan. 30, 1987) [Available on WESTLAW, DCT database] (available on Lexis).

In another case, Judge Leval also declined to find a pattern where a contractor engaged in a lawful enterprise performed numerous fraudulent acts designed to bilk one customer on a construction project of finite duration and scope. *The Procter & Gamble Company v. Big Apple Industrial Buildings, Inc.,* 655 F.Supp. 1179 (S.D.N.Y. 1987). He did not find *Ianniello* controlling since *Ianniello,* unlike his case, involved "numerous episodes" of fraudulent activity "continuing over a period of years at several different bars and restaurants" and arose in the context of a criminal enterprise. *Id.* at 1183.

Although we are sympathetic with the aim of the courts in the latter cases,[8] we believe that *Ianniello's* applicability to the civil arena is incontestable. Beyond any doubt, the uses to which RICO has been put surpass the contemplation of its enactors. But narrowing RICO is a job for Congress, not the courts.

We turn now to the Amended Complaint. Our task is not an easy one because, as earlier discussed, the predicate acts relating to the alleged fraud have not been pleaded with particularity. But that deficiency may be curable and it is likely that a more particularized pleading will allege ad-

---

8. This is not to say that we necessarily agree with the reasoning of these cases. For example, we are not persuaded by the notion that a looser pattern requirement should be judicially engrafted in the criminal RICO context than in the civil, which is the implication in *Shopping Mall*
and *Procter and Gamble.* Although it is true that *Ianniello* was a criminal case, in adopting the *Feldesman* approach and rejecting the *Frankart* line of cases, the court circuit relied entirely on RICO cases arising in the civil context.

equately the pattern requirement. This is so because the existence of related predicate acts giving rise to indictable offenses, although in the context of one scheme, will satisfy the pattern requirement. Accordingly, we will permit the Trustee to replead.

### (iv) *Conspiracy*

■ To plead a RICO conspiracy pursuant to 18 U.S.C. § 1962(d), it is necessary that the complaint allege that the defendant agreed to commit two or more predicate acts of racketeering. *United States v. Ruggiero,* 726 F.2d 913, 921 (2d Cir.), *cert. denied,* 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984). However, the commission of the predicate acts is not necessary; only the agreement is required. *United States v. Teitler,* 802 F.2d 606, 613 (2d Cir.1986).

■ We agree with BONY that the Amended Complaint fails to allege any agreement. In any event, the predicate acts have not been pleaded sufficiently (see discussion *supra*). But these deficiencies may be curable.

■ We disagree, however, with BONY'S contention that the Trustee is required and has failed to allege that any overt act was taken in furtherance of the conspiracy. Unlike other conspiracy statutes, section 1962(d) does not require proof of overt acts. *Teitler, supra,* 802 F.2d at 613.

### *Fraud and Deceit*

■ Defendant contends that the Amended Complaint fails to allege a cause of action for fraud and deceit. We agree. The elements of common law fraud and deceit are:

(1) misrepresentation of a material fact;

(2) falsity of that misrepresentation;

(3) scienter;

(4) reliance; and

(5) damages.

*See Mallis v. Bankers Trust Co.,* 615 F.2d 68, 80 (2d Cir.1980), *cert. denied,* 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981),

*remanded* 717 F.2d 683 (1983); *Jaksich v. Thomson McKinnon Securities, Inc.,* 582 F.Supp. 485, 502 (S.D.N.Y.1984); *First Federal Savings & Loan Association v. Oppenheim, Appel, Dixon & Co., supra,* 629 F.Supp. at 435; *Murray v. Xerox Corporation,* 811 F.2d 118 (2d Cir.1987).

The Amended Complaint paints a picture of misappropriation through cash transfers facilitated by Shipson and the Principals. But allegations of misdoings, regardless of their detail, do not necessarily give rise to an action for fraud and deceit. And here, clearly, they do not, for the Trustee has failed to allege any misrepresentation of material fact, let alone falsity, scienter or reliance. *See Conan Properties, Inc. v. Mattel, Inc.,* 601 F.Supp. 1179 (S.D.N.Y. 1984); *Lesser v. A–Z Associates (In re Lion Capital Group), supra,* 44 B.R. at 697.

In *Conan,* as in our case, the complaint left the defendant (and the court) in the dark as to the nature and circumstances of the misrepresentations. "Plaintiff fails to allege what the misrepresentations were, who made them, or when and where they were made." *Id.* at 1183. Offering the plaintiff guidance, the court aptly stated that to satisfy the particularity requirements of Fed.R.Civ.P. 9(b), the complaint must specify:

(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants "obtained as a consequence of the fraud."

*Id.,* citing *Todd v. Oppenheimer & Co., Inc.,* 78 F.R.D. 415, 420–21 (S.D.N.Y.1978) [quoting *Gross v. Diversified Mortgage Investors,* 431 F.Supp. 1080, 1088 (S.D.N.Y. 1977), *aff'd sub nom. Wechsler v. Diversified Mortgage Investors,* 636 F.2d 1206 (2d Cir.1980) ].

■ Although the particularity requirements are fulfilled where we might reason-

ably infer from the particulars alleged what was materially false or misleading, *Credit & Finance Corp. Ltd. v. Warner & Swasey Company*, 638 F.2d 563 (2d Cir. 1981), we are unable to do so here.

Accordingly, it is clear that the Trustee's Amended Complaint does not state a claim for fraud and deceit.

### Fraudulent Transfers

In her sixth claim for relief, the Trustee pleads fraudulent transfers in violation of section 548 of the Code 11 U.S.C. § 548, and sections 270 *et seq.* of the New York Debtor and Creditor Law.

### (i) *Code Section 548*

■ Section 548 of the Code allows a trustee to avoid certain transfers that were made "on or within one year before the date of the filing of the petition ..." All of the alleged transfers occurred after the debtor filed its chapter 11 petition and thus fall outside the scope of this section.[9]

### (ii) *State Law Fraudulent Transfer Claims*

■ BONY urges that the Amended Complaint is subject to dismissal insofar as it purports to invoke the fraudulent transfer provisions of the New York Debtor and Creditor Law, § 270 *et seq.*, pursuant to 11 U.S.C. § 544(b). We agree. BONY asserts that those powers of avoidance possessed by the Trustee which are derivative of the rights of actual creditors absent bankruptcy relate solely to pre-petition transfers. The Trustee has not responded to this argument. Although a literal reading of section 544(b) might seem to permit its use to avoid post-petition transfers, such an interpretation of the statute is inappropriate.

We begin, as we must, with the words of section 544(b), but, as Justice Frankfurter remarked in *Some Reflections on The Reading of Statutes*, 47 Colum.L.Rev. 527, 535 (1947) (hereinafter "Some Reflections"), we need not necessarily end there. Section 544(b) permits the trustee to

avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

Conspicuously absent from the statute is any requirement as to when the transfer must have occurred.

Because the trustee's so-called "strong arm" powers contained in subsection (a) of section 544 are limited to the rights of hypothetical creditors "as of the commencement of the case" and because subsection (b) is not so limited, one might conclude that subsection (b) is available to avoid a post-petition transfer. And, indeed, one state court, construing a predecessor statute, former 11 U.S.C. § 110(e) [section 70(e) of the Bankruptcy Act], so concluded. *Doyle v. Gordon*, 158 N.Y.S.2d 248, 255–56 (Sup.Ct.N.Y.Co.1954).[10] But *Doyle* rested upon broad language in *Baldwin v. Kingston*, 247 F. 163, 165 (D.N.J.1918), *aff'd*, 257 F. 554 (3d Cir.1919), a case involving a pre-petition transfer and which pre-dated the Chandler Act of 1938 (which for the first time included a statute dealing with post-petition transfers). To construe section 544(b) as did the *Doyle* court would tear asunder the statutory fabric woven in subchapter III of chapter 5 of the Bankruptcy Code. As Justice Frankfurter cautioned,

Statutes cannot be read intelligently if the eye is closed to considerations evidenced in affiliated statutes....

*Some Reflections*, 47 Colum.L.Rev. at 539.

When Congress enacted the Bankruptcy Reform Act of 1978, it provided the trustee with an arsenal of weapons designed to

---

**9.** The subsequent conversion of this case to chapter 7 does not effect a change in the date of the filing of the petition. 11 U.S.C. § 348.

**10.** Without discussion, the district court in *Holahan v. Misuraca*, 112 F.Supp. 504 (E.D.La.1953),

purported to avoid a post-petition transfer by utilizing former section 70(e). It would appear that the issue of the statute's applicability was never raised.

permit him to recover for the estate certain property transferred in fraud of creditors, 11 U.S.C. §§ 544 and 548, or which tended to prefer one creditor over others, 11 U.S.C. §§ 544, 545, 547 and 553. All of these avoiding powers, including that conferred by section 544(b), are circumscribed by the same statute of limitations, 11 U.S.C. § 546, that is, the earlier of two years after the appointment of a trustee or the time the case is closed or dismissed. In addition, Congress conferred upon the trustee by virtue of 11 U.S.C. § 549 the ability to avoid unauthorized post-petition transfers. Significantly, the avoidance of such transfers is governed by a separate statute of limitations keyed not to the appointment of the trustee but to the date of the transfer. 11 U.S.C. § 549(d).

Were section 544(b) meant to apply to post-petition transfers, it would have made little sense to limit the trustee to recovering those transfers, avoidable under nonbankruptcy law, which were made only within two years from the time of the trustee's appointment. A statute of limitations such as that contained in section 549 and linked to the making of the transfer would necessarily have been provided. Indeed, one leading commentator has described the section 546 statute of limitations as applying to only pre-petition transfers. 4 L. King, *Collier on Bankruptcy*, ¶ 549.03[4] at 549–15 (15th ed. 1986). And given the extraordinary breadth of section 549, we are compelled to conclude that transfers such as those which the Trustee seeks to avoid were intended to be embraced by section 549 and not by section 544. *Accord,* 4 L. King, *Collier on Bankruptcy*, ¶ 544.03, at 544–16, n. 8 (15th ed. 1986); *cf.* 4B L. King, *Collier on Bankruptcy*, ¶ 70.90 at 1029, n. 12 (14th ed. 1978) (as to the law under the Bankruptcy Act).

This conclusion is wholly in keeping with prior law holding that the filing of a bankruptcy petition effected a cleavage; the condition of the estate was assessed as of that date, *Everett v. Judson*, 228 U.S. 474,

479, 33 S.Ct. 568, 569–70, 57 L.Ed. 927 (1913); *see also Andrews v. Partridge*, 228 U.S. 479, 33 S.Ct. 570, 57 L.Ed. 929 (1913), and the trustee's avoiding powers derivative from creditors, be they hypothetical or actual, were limited to such rights as existed as of that date.[11] *Lewis v. Manufacturers National Bank*, 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961). Accordingly, we deny the Trustee's motion to amend insofar as it seeks to assert claims under section 544(b).

### *Conversion*

■ BONY attacks as insufficient the Trustee's claim for conversion. Conversion is defined as the wrongful or unlawful appropriation of personal property by one not entitled to possession. *Bunge Corp. v. Manufacturers Hanover Trust Co.*, 37 A.D.2d 409, 325 N.Y.S.2d 983 (1st Dep't 1971), *aff'd* 31 N.Y.2d 223, 335 N.Y.S.2d 412, 286 N.E.2d 903 (1972); *Employers' Fire Insurance Co. v. Cotten*, 245 N.Y. 102, 156 N.E. 629 (1927). Stated another way, conversion is the "unauthorized exercise of dominion or control over property by one who is not its owner which interferes with another person's superior possessory rights." *Cauble v. Mabon Nugent & Co.*, 594 F.Supp. 985, 995 (S.D.N.Y.1984); *accord Wabco Trade Company Division of World Standard Export, Ltd. v. S.S. Inger Skou*, 482 F.Supp. 444, 448 (S.D.N.Y. 1979). "The tort of conversion does not require defendant's knowledge that he is acting wrongfully, but 'merely an intent to exercise dominion or control over property in a manner inconsistent with the rights of another.' *United States v. Morrison*, 536 F.2d 286, 289 (9th Cir.1976). The absence of benefit to [the defendant] does not preclude liability." *Id.*

Here, after incorporating all of the factual allegations of the pleading, the Amended Complaint alleges, upon information and belief, that BONY "engaged in a conspiracy to convert the funds of the debtor to the use and benefit of itself and to defraud

---

**11.** In an involuntary case, the cleavage date was the date of adjudication as bankrupt rather than the date when the petition was filed.

the debtor and deprive it permanently of those funds." Inasmuch as the Amended Complaint also sets forth in some detail the unauthorized transfers of the debtor's funds, it sufficiently alleges the tort of conversion. *See* Restatement (Second) of Torts §§ 229 and 235(3) (1965).

### Post-Petition Transfers

 BONY's attack on the Trustee's final claim for recovery of unauthorized post-petition transfers is without merit. Most assuredly that claim can survive a motion to dismiss for it alleges the requisite elements embraced in 11 U.S.C. § 549, specifically, that transfers were made after the commencement of the case which were not authorized by the court or Code. Section 550, upon which the Trustee grounds her claim, implements section 549. We find unpersuasive BONY's argument that dismissal would be warranted because the particular section was not expressly named in the claim for relief.[12]

### Punitive Damages

The Trustee has requested the imposition of punitive damages against BONY based upon the above transactions. BONY opposes such relief asserting that no claim for actual damages has been pleaded and that punitive damages are only appropriate in extraordinary circumstances.

We have already determined that the Trustee has pleaded a claim for conversion. And punitive damages are quite properly allowed in tort actions, *Fort Howard Paper Company v. William D. Witter, Inc.*, 787 F.2d 784, 793 (2d Cir. 1986), including an action for conversion. *Fraser v. Doubleday & Company*, 587 F.Supp. 1284, 1288 (S.D.N.Y.1984). To award punitive damages in a conversion case, it must be alleged that the conversion was "accomplished with malice or reckless disregard of plaintiffs' rights...." *Fraser*, 587 F.Supp. at 1288 (S.D.N.Y.1984).

12. Paragraph 7 of the Amended Complaint recites, in any event, that the Trustee is proceeding under section 549, among other sections.

13. We express no view as to whether Shipson and any other of BONY'S employees were of the

That standard has been pleaded in the Amended Complaint.[13] (See ¶ 79 of the Amended Complaint.)

### CONCLUSION

Based on the above, we grant so much of the Trustee's motion as seeks leave to assert claims under 11 U.S.C. § 549 and for conversion and deny without prejudice to repleading so much of the motion as seeks to assert claims for fraud and deceit and under RICO. The remainder of the motion, which seeks to assert claims under bankruptcy and state fraudulent transfer laws, is denied. Any amended pleading shall be served and filed within 20 days from the date of this order.

IT IS SO ORDERED.

status necessary to expose BONY to the imposition of punitive damages. *See generally Roginsky v. Richardson-Merrell, Inc.*, 378 F.2d 832, 842 (2d Cir.1967).