■ LILLIAN M. G. MURPHY, Respondent, v ROBERT S. MURPHY, Appellant. — Kane, J. Appeal from a judgment of the Supreme Court in favor of plaintiff, entered January 12, 1984 in Broome County, upon a decision of the court at Trial Term (Smyk, J.), without a jury.

Although plaintiff and defendant lived together from 1968 to 1982, they were never married. Plaintiff's attempt to declare herself the common-law wife of defendant failed for lack of proof, and there is no appeal by her from that portion of the judgment which dismissed such cause of action. However, she was successful in obtaining a verdict against defendant in the sum of $10,000 for conversion of personal property and $90,000 for the intentional infliction of severe emotional distress. On this appeal, defendant seeks reversal of the monetary awards, including costs and interest, in the judgment entered against him.

The parties met at a bowling alley in 1967 and began living together shortly thereafter. Plaintiff was divorced at that time and defendant obtained a divorce in 1969. There were children of the prior marriages of both parties. Defendant operated a sand, gravel and concrete manufacturing business which grew and prospered over the years of his relationship with plaintiff. They resided together on "Murphy's Island" an eight-acre island in the Susquehanna River in the Town of Union, Broome County, near that portion of the mainland where defendant conducted his business. Together, with the aid of their children, they constructed a large modern home on the island, title to which was vested in defendant, although it was plaintiff's only place of abode.

Their life together on the island is described in the over 500 pages of trial testimony by two diametrically opposite versions. Defendant characterizes the circumstances resulting in their ultimate breakup as "unpleasant" or "marital squabbles", while plaintiff describes defendant's conduct as "barbaric" and "psychopathic sadism". The record, including numerous photographs and plaintiff's diary, supports both views. There is no question but that plaintiff maintained the home on the island, entertained defendant's family, employees and business associates, traveled with him on out-of-State business trips, and purchased certain furnishings and equipment for the home. Equally certain is the fact that while defendant enjoyed the benefits of their relationship for a few years, his affection was shared with others and marriage was not in his plans for the future. Actually, he advised plaintiff in 1972 that their relationship should terminate and she should leave. He followed this suggestion in 1973 by removing all her possessions to a garage on the mainland, but

she moved everything back to the house. Defendant thereafter contemplated legal proceedings to remove her but, in essence, matters remained relatively static until 1981, when what could be described as a stormy relationship reached hurricane force. It is defendant's actions from August 11, 1981, when plaintiff alleges that he killed her pet Canadian goose, to September 9, 1982, when plaintiff moved to the City of Ithaca, allegedly left penniless, that form the basis for the cause of action for intentional infliction of severe emotional distress.

The trial court concluded that plaintiff carried her burden of proof by a preponderance of the credible evidence as to defendant's outrageous conduct. We agree with the trial court's determination of the factual issues, many of which are supported by documentary or photographic evidence. Moreover, defendant's reversion to "self-help" and his violation of court orders as to his course of conduct lend support to many allegations of his natural tendency for precipitous action. His breaking of screens and smashing of windows to force entry into the house and his threats, use of force, assaults upon and general abusive conduct toward plaintiff are well documented. His outrageous conduct after consumption of intoxicating liquors, including the wanton destruction of plaintiff's belongings, requiring police intervention to protect plaintiff and her property, are also substantiated.

In our view, the circumstances do not constitute a mere matrimonial dispute (*see, Weicker v Weicker,* 22 NY2d 8). Moreover, the behavior of defendant, which is the basis of the claim of emotional harm, occurred after whatever relationship in fact existed between the parties had terminated (*see, Baron v Jeffer,* 98 AD2d 810, *appeal dismissed* 62 NY2d 802). Indeed, the conduct of this defendant seems to fit nicely within the rule stated in the Restatement (Second) of Torts (§ 46 [1] [1965]) that: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress". (*See also, Fischer v Maloney,* 43 NY2d 553, 557.) The deliberate and malicious campaign of harassment vindictively conducted by defendant was, in our view, "outrageous" beyond peradventure.

Moreover, the cause of action exists separate and apart from the traditional torts where other interests are invaded, particularly when, as here, the acts are a direct result of the desire to inflict severe emotional distress and it is substantially certain that such distress will result from the actions taken (Restatement [Second] of Torts § 46 comments b, d, i [1965]). Accordingly, once this determination is made, the existence of severe emotional distress and proximate cause may be inferred

therefrom without expert medical opinion where, as here, plaintiff has testified as to her emotional condition for which she sought medical and psychiatric attention (7A [Part 2] Warren, Negligence in the New York Courts, Mental Suffering § 3.04 [3], [4], at 485-490 [rev ed 1984]). It is a factual question within the province of the trier of the facts to determine if the direct infliction of emotional distress is so severe that no reasonable person would be expected to endure it. Certainly, in this case, plaintiff's fright, hysteria, calls for help and obtaining a warrant for the arrest of defendant supply sufficient evidence of the direct infliction of severe emotional distress (*cf. Kennedy v McKesson Co.,* 58 NY2d 500, 504, n).

On the issue of damages, it is our view the damages awarded in the action for conversion should be affirmed. However, the award for damages for severe emotional distress should be reduced. There is no proof that plaintiff's condition is of a permanent nature, for we are limited by her own testimony on this issue. An award of this nature is not punitive in purpose, nor is it an award of a share of defendant's assets acquired during their relationship. Its sole purpose is to compensate plaintiff for damages sustained. The award should be reduced to the sum of $45,000.

Finally, we perceive no error in plaintiff reading from her diary on direct examination (*see, People v Raja,* 77 AD2d 322, 325-328; Richardson, Evidence § 470, at 461 [Prince 10th ed 1973]).

Judgment modified, on the law and the facts, by reducing the amount of the award for intentional infliction of severe emotional distress to $45,000, matter remitted to Trial Term for a recalculation of the interest award,* and, as so modified, affirmed. Kane, Weiss and Levine, JJ., concur; Mahoney, P. J., and Casey, J., dissent and vote to reverse in the following memorandum by Mahoney, P. J.

Mahoney, P. J. (dissenting). In our view, the tort of intentional infliction of severe emotional distress is inapplicable to the facts set forth in the record. The parties to this action lived together for 14 years and, during the last decade of that period, their relationship was both strident and bizarre. In 1973, approximately five years after their relationship began, defendant removed all of plaintiff's possessions to the mainland and declared their tryst at an end. Plaintiff moved everything back to the island and voluntarily endured for the next nine years

---

* We note that the parties correctly agree that interest to the date of verdict on the award for intentional infliction of severe emotional distress is not available (CPLR 5001 [a]).

defendant's indifference toward her as a nonmarital partner. In August 1981, plaintiff began a written serialization of defendant's acts of assault, threats, neglect and property destruction. This diary was the centerpiece of plaintiff's cause of action "for conduct exceeding all bounds usually tolerated by decent society" (Prosser and Keeton, Torts, § 12, at 60 [5th ed 1984]). It covered a period approximately 10 years in length, and not once during that period did plaintiff either remove herself from the island or seek redress by resort to any traditional tort action. Rather, she meticulously recorded each alleged event until, apparently, the totality of defendant's conduct justified this action for money damages.

In *Halio v Lurie* (15 AD2d 62), the seminal case in this State that first recognized the tort of intentional infliction of severe emotional distress, the court recognized the clear danger of vexatious suits and fictitious claims, as did the Court of Appeals in *Fischer v Maloney* (43 NY2d 553, 557-558), wherein it stated, "Indeed, it may be questioned whether the doctrine of liability for intentional infliction of extreme emotional distress should be applicable where the conduct complained of falls well within the ambit of other traditional tort liability". Indeed, liability for the traditional torts of assault, battery and trespass existed for over centuries before the still-evolving independent tort of intentional infliction of severe emotional distress was recognized to meet those rare instances where one is damaged by invidious, malevolent conduct of another without physical impact. Here, plaintiff diaried numerous acts of assault against her person and destruction of her property, all of which could have been redressed by resort to traditional tort actions.

Next, at trial plaintiff testified that she did not have any independent recollection of the incidents relied upon by her to prove her action for intentional infliction of extreme emotional harm, all of which allegedly occurred in 1981 and 1982. Accordingly, over defendant's objection, she was permitted to read extensively, at times verbatim, from her rewritten diary, which was penned during 1982 or 1983. This diary was apparently a re-creation of another diary. While deference is ordinarily afforded to factual determinations of a trier of facts when the issue is trustworthiness of a memorandum of past recollection recorded (*see, People v Raja,* 77 AD2d 322, 327) such deference should be withheld where, as here, by plaintiff's own admission, the document was not made contemporaneously with the events described. While no arbitrary time limitation has been evolved by judicial decision, such phrases as " 'at or about the time of the transactions' ", " 'at the time or soon after' " and " 'at or near the

time'" are commonly used to satisfy the trustworthiness guarantee (*see*, Fisch, New York Evidence § 335, at 219 [2d ed 1977]; Richardson, Evidence § 469, at 460-461 [Prince 10th ed 1973]). Here, plaintiff could not recall whether the diary used at trial to refresh her recollection about events that occurred in 1981 and 1982 had been rewritten in either 1982 or 1983. It, therefore, could not be admitted into evidence either directly as an exhibit or indirectly through her reading from it word for word as a past recollection recorded in the absence of any proof that the rewritten diary was made when plaintiff's memory of the facts was still sufficiently fresh to enable her to correctly record them.

We would, therefore, reverse the judgment and dismiss the cause of action for intentional infliction of severe emotional distress.