**Leslie SHAW, Plaintiff,**

v.

**ROLEX WATCH, U.S.A., INC., et al., Defendants.**

**No. 86 Civ. 5244 (WCC).**

United States District Court, S.D. New York.

Nov. 12, 1987.

Soller, Singer & Horn, New York City, for plaintiff; Carl R. Soller, of counsel.

Gibney, Anthony & Flaherty, New York City, for Rolex Watch, U.S.A., Inc. and Rolex Industries, Inc.; Stephen F. Ruffino, of counsel.

**WILLIAM C. CONNER, District Judge.**

Plaintiff Leslie Shaw seeks to recover damages in excess of $7,500,000, trebled, for injuries resulting from defendants' alleged violations of sections 1 & 2 of the Sherman Anti–Trust Act, 15 U.S.C. §§ 1 & 2 (1982), and the Racketeering Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 (c) & (d) (1982). Plaintiff has also asserted pendent state law claims for fraud, conversion and intentional infliction of emotional distress on which he seeks compensatory damages in the amount of $16,000,000, and punitive damages in the amount of $28,000,000. Defendants Rolex Watch U.S.A., Inc. ("Rolex U.S.A.") and Rolex Industries, Inc. ("Rolex Industries") have moved to dismiss the complaint under Rule 12 (b) (6), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted.[1] Defendants have also asked the

---

1. The other named defendants are not parties to this motion, and it appears that they have not been properly served with process. Since there has been no motion regarding these defendants,

Court to impose sanctions on plaintiff's attorneys under Rule 11, Fed.R.Civ.P. For the reasons set forth below, defendants' motion to dismiss is granted in part and denied in part. Defendants' motion for Rule 11 sanctions is denied.

## I. *Facts*

In considering defendants' motion to dismiss under Rule 12 (b) (6) the allegations of the complaint must be taken as true, *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972), and the complaint must be construed favorably to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Plaintiff alleges that the named defendants conspired to submit documents to the United States Customs Service which fraudulently stated that Rolex U.S.A. was not owned or controlled by the Swiss owner of the Rolex trademark. The purported aim of this conspiracy was to gain the protection of section 526 of the Tariff Act of 1930, 19 U.S.C. § 1526 (1982).

Under section 526, the owner of a registered trademark can prevent the importation of products bearing the trademark. To employ section 526 the trademark owner must record the trademark with the United States Customs Service. 19 U.S.C. 1526(a). Should someone other than the owner of the U.S. mark attempt to import the trademarked goods, the Customs Service may seize the goods and hold them forfeit. 19 U.S.C. 1526(b). Section 526, however, only protects trademark owners who are United States citizens, or corporations or associations created or organized within the United States. 19 U.S.C. 1526(a). Moreover, the Customs Regulations promulgated to enforce section 526 provide that the restrictions on the importation of articles bearing the recorded trademark do not apply when the foreign and domestic trademark owners are under common ownership or control. 19 C.F.R. § 133.21(c)(2).

Plaintiff alleges that Rolex U.S.A., a corporation organized under the laws of the State of New York, and Montres Rolex, S.A. ("Montres Rolex"), a Swiss corpora-

tion, are under common ownership and control. In their filings with Customs, however, defendants denied any connection between Rolex U.S.A. and the Swiss holders of the trademark. Plaintiff asserts that defendants made these representations with knowledge that they were false in order to gain the protection of section 526.

According to the complaint, the plaintiff Mr. Shaw "has been" an importer of watches including genuine Rolex watches. On January 13, 1985, Mr. Shaw sought to import eight genuine Rolex watches. Customs seized the watches pursuant to 19 C.F.R. 133.21 in reliance on defendants' fraudulent recordation of the Rolex trademark. On August 8, 1985, plaintiff was indicted in the United States District Court of Maryland (Crim.No. R–85–0423) for alleged violations of the trademark protection granted to Rolex Watch U.S.A. under section 526.

Plaintiff alleges that subsequent to the indictment he was hospitalized for treatment of Ramsey Hunt Syndrome, a painful nervous disorder. After five months, during which plaintiff suffered severe emotional and physical distress together with the loss of business good will and of potential business in Rolex watches, the indictment was dismissed.

Sometime thereafter, Mr. Shaw requested the permission of Rolex U.S.A. to import the seized watches pursuant to 19 C.F.R. § 133.21(c)(6). At the ensuing meeting Rolex U.S.A. reasserted its exclusive right to import Rolex watches, and refused to grant Mr. Shaw the right to import the eight seized watches.

## II. *Discussion*

### A. *Antitrust Claims*

Plaintiff asserts that the conspiracy to submit falsified documents to Customs constitutes a conspiracy to restrain trade and an attempt to monopolize trade in Rolex watches in violation of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 & 2. Plaintiff also alleges a combination in restraint of trade and a monopolization of

the Court does not now rule on whether they have been properly served.

trade in Rolex watches. Defendants request that the antitrust claims be dismissed on two related grounds. First, defendants assert that plaintiff lacks antitrust standing. Second, defendants contend that plaintiff has failed to allege an antitrust violation. I turn first to the legal sufficiency of the antitrust allegations, since plaintiff cannot have antitrust standing if he does not allege a cognizable antitrust violation.[2]

Defendants take issue with two of the premises which form the basis of plaintiff's allegation of antitrust violations. First, plaintiff has alleged a conspiracy between companies that are under common ownership and control. Defendants reply that the Sherman Act does not recognize a conspiracy between commonly owned and controlled companies. Second, plaintiff bases his monopoly and attempted monopoly claims upon a product market that consists solely of Rolex watches. Defendants respond that a product market consisting solely of a single branded product cannot form the basis of a § 2 claim.

Defendants assert that *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984), bars plaintiff's combination and conspiracy claims. In *Copperweld* the Supreme Court held that the joint activities of a parent company and its wholly owned subsidiary cannot constitute a combination or conspiracy in violation of § 1 of the Sherman Act. 467 U.S. at 776, 104 S.Ct. at 2744. The Court noted that the Sherman Act treats unilateral activity differently from concerted activity. *Id.* at 767–69, 104 S.Ct. at 2739–41. Under the Sherman Act, the conduct of a single firm acting alone is governed by § 2 and does not constitute a violation unless it threatens actual monopolization. Concerted activity, however, is governed by § 1 and is unlawful regardless of whether it poses a threat of monopolization. This distinction imposes a stricter standard on the conduct of concerted activity. The Court reasoned that Congress created this heightened standard to offset the increased anticompetitive risks posed by "two or more entities that previously pursued their own interests ... combining to act as one for their common benefit." *Id.* at 769, 104 S.Ct. at 2740. Elevating substance over form, the Court concluded that a parent and its wholly owned subsidiary should be considered one firm for purposes of the Sherman Act. *Id.* at 771, 104 S.Ct. at 2741.

According to the complaint, Rolex U.S.A. is under common ownership and control with the alleged co-conspirators, but it is not a wholly owned subsidiary. In *Copperweld*, the Court expressly declined to decide whether a conspiracy between a parent and an affiliated company it does not completely own violates § 1. 467 U.S. at 767, 104 S.Ct. at 2739. Nonetheless, under the *Copperweld* rationale the relationship between Rolex U.S.A. and Montres Rolex cannot support a finding of liability under § 1.

■ As articulated in *Copperweld*, Congress's purpose in enacting § 1 was to prevent the anticompetitive effect of previous-

---

**2.** The requirement of antitrust standing derives from section 4 of the Clayton Act, 15 U.S.C. § 15 (1982), which creates a private right of action for damages under the antitrust laws. The statute states in pertinent part: "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue."

In *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 529–35, 103 S.Ct. 897, 903–07, 74 L.Ed.2d 723 (1983), the Supreme Court concluded that while the language of the statute is broad, it should be read narrowly in keeping with the history and purpose of the act. The Court identified four factors which limit antitrust standing: (1) the nature of the injury, that is, whether a plaintiff has suffered an antitrust injury; (2) directness of the injury or causation; (3) speculativeness of damages; and (4) risk of duplicative recovery. *Id.* at 539–45, 103 S.Ct. at 909–12.

Antitrust injury is different from the typical legally compensable injury. In a lawsuit for personal injury, for example, it is enough simply to allege injury resulting from the breach of a legal duty. A proper allegation of antitrust injury, however, has three elements: (1) a violation of the antitrust laws; (2) a causal link between the violation and the injury; and (3) an injury that reflects the anti-competitive effects of the violation. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 486–89, 97 S.Ct. 690, 696–98, 50 L.Ed.2d 701 (1977). Therefore, to establish standing plaintiff must first plead an antitrust violation.

ly separate and competing entities combining to act as one for their common benefit. 467 U.S. at 768–72, 104 S.Ct. at 2740–42. As stated in the complaint, however, Rolex U.S.A. and Montres Rolex never were separate, competing entities. Plaintiff has alleged that from Rolex U.S.A.'s incorporation in 1948 until 1977, Rolex U.S.A. was the wholly owned subsidiary of Montres Rolex. Complaint ¶ 24. The complaint further alleges that in 1977 the defendants added an additional corporate layer to separate Rolex U.S.A. from the Montres Rolex companies. *Id.* at ¶ 26. Therefore, because the concerted behavior alleged in the complaint does not threaten to bring two previously competing entities together as one, the alleged § 1 violation is inadequate as a matter of law.

■■■ Plaintiff's allegations of an attempt to monopolize and a successful monopolization of the market for Rolex watches in violation of § 2 are also inadequate. A valid claim for monopolization or attempted monopolization must define the relevant product market. *See United States v. Grinnell Corp.,* 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966); *Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co., Inc.,* 614 F.2d 832, 840 (2d Cir.1980). Plaintiff asserts that Rolex watches constitute a product market unto themselves. Complaint ¶¶ 51–57. This definition of the relevant product market, however, cannot support a claim under § 2.

It is well established that the relevant product market includes all products that are reasonably interchangeable. *See Brown Shoe Co. v. United States,* 370 U.S. 294, 325, 82 S.Ct. 1502, 1524, 8 L.Ed.2d 510 (1962); *United States v. E.I. du Pont de Nemours & Co.,* 351 U.S. 377, 395, 76 S.Ct. 994, 1007, 100 L.Ed. 1264 (1956); *Nifty Foods,* 614 F.2d at 840; *Yoder Bros., Inc. v. California–Florida Plant Corp.,* 537 F.2d 1347, 1366 (5th Cir.1976), *cert. denied,* 429 U.S. 1094, 97 S.Ct. 1108, 51 L.Ed.2d 540 (1977); *Century Air Freight, Inc. v. American Airlines,* 597 F.Supp. 564, 572 (S.D.N.Y.1984). In *du Pont,* the seminal case defining this principle, the Supreme Court

rejected the notion that a single trademarked product can constitute a relevant market, stating,

> one can theorize that we have monopolistic competition in every nonstandardized commodity with each manufacturer having power over the price and production of his own product. However, this power that, let us say, automobile or soft-drink manufacturers have over their trademarked products is not the power that makes an illegal monopoly. Illegal power must be appraised in terms of the competitive market for the product.

351 U.S. at 393, 76 S.Ct. at 1006 (footnotes omitted).

Since *du Pont,* the lower courts have consistently refused to restrict a relevant market to a company's trademarked product. *See Ron Tonkin Gran Turismo, Inc. v. Fiat Distributors,* 637 F.2d 1376, 1387 (9th Cir.) (Fiat automobiles), *cert. denied,* 454 U.S. 831, 102 S.Ct. 128, 70 L.Ed.2d 109 (1981); *Morse v. Swank, Inc.,* 493 F.Supp. 110, 115 (S.D.N.Y.1980) (Pierre Cardin lighters); *Donald B. Rice Tire Co. v. Michelin Tire Corp.,* 483 F.Supp. 750, 755 (D.Md.1980) (Michelin tires), *aff'd per curiam,* 638 F.2d 15 (4th Cir.), *cert. denied,* 454 U.S. 864, 102 S.Ct. 324, 70 L.Ed.2d 164 (1981); *H.L. Moore Drug Exchange v. Eli Lilly & Co.,* 1978–1 Trade Cases (CCH) ¶ 62,082 at p. 74,711 (S.D.N.Y.1978) (Eli Lilly pharmaceutics); *Mogul v. General Motors Corp.,* 391 F.Supp. 1305, 1313 (E.D. Pa.1975) (Cadillac automobiles), *aff'd mem.,* 527 F.2d 645 (3d Cir.1976); *Carlo C. Gelardi Corp. v. Miller Brewing Co.,* 421 F.Supp. 237, 243–44 (D.N.J.1976) (Miller beer); *Mt. Lebanon Motors, Inc. v. Chrysler Corp.,* 283 F.Supp. 453, 461 (W.D.Pa. 1968) (Dodge automobiles), *aff'd per curiam,* 417 F.2d 622 (3d Cir.1969).

Plaintiff argues that the determination of the relevant product market is a question of fact rather than law, and therefore should not be decided on a motion to dismiss. To raise a question of fact, however, plaintiff must allege a plausible product market. *See Gianna Enterprises v. Miss World (Jersey) Ltd.,* 551 F.Supp. 1348, 1354 (S.D.N.Y.1982) (motion to dismiss

granted when plaintiff had not set out "a theoretically rational explanation" to support its proposed relevant product market); *Car-Freshener Corp. v. Auto Aid Mfg. Corp.*, 438 F.Supp. 82, 87 (N.D.N.Y.1977) (motion to dismiss granted when, "under any set of facts," defendants could not prove a § 2 counterclaim predicated on its proposed product market); *cf. Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (ruling on motion for summary judgment that there can be no genuine issue of fact when an antitrust claim is so implausible as to make no economic sense). This Court does not need protracted discovery to state with confidence that Rolex watches are reasonably interchangeable with other high quality timepieces. Since plaintiff has not alleged a plausible product market, his § 2 claims are dismissed.[3]

### B. *RICO Claims*

Plaintiff alleges that defendants obtained their trademark recordation by conveying false and misleading information to Customs by mail, telephone and wire transmissions, thereby violating 18 U.S.C. § 1343 on at least two separate occasions. Complaint ¶¶ 68–70. Plaintiff further alleges that defendants have received and transported plaintiff's property on two or more separate occasions, with knowledge that the property was taken by fraud, thereby violating 18 U.S.C. §§ 2314 & 2315. Complaint ¶¶ 71–75. Plaintiff concludes that the defendants collectively constitute an enterprise that participates in or affects interstate commerce, and that by engaging in the criminal conduct alleged above, defendants have conducted the affairs of that enterprise through a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(c). Complaint ¶¶ 76–78. Plaintiff also alleges a conspiracy to violate RICO, § 1962 (c).

Under RICO any person injured in his business or property by reason of a violation of section 1962 may sue for treble damages. 19 U.S.C. 1964(c). This provision is essentially the same as § 4 of the Clayton Act. *See supra* note 2 (quoting the parallel provision in the Clayton Act). While Congress modeled the private RICO remedy on the antitrust remedy, *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 487, 105 S.Ct. 3275, 3280–81, 87 L.Ed.2d 346 (1985), Congress was also concerned that the antitrust analogy should not " 'create inappropriate and unnecessary obstacles in the way of … a private [RICO] litigant.' " *Id.* at 498, 105 S.Ct. at 3287 (quoting 115 Cong.Rec. 6995 (1969) (ABA comments on S. 2048)). Recognizing Congress's dual intent, the Supreme Court in *Sedima* refused to find that § 1964(c) encompassed a racketeering injury requirement analogous to the Clayton Act's antitrust injury requirement. 473 U.S. at 495, 105 S.Ct. at 3285. In refusing to recognize a racketeering injury requirement the Supreme Court did not ignore Congress's reliance on the Clayton Act. Rather, heeding Congress's admonition not to create inappropriate and unnecessary obstacles to private RICO litigants, the Court found that a racketeering injury requirement would be "unhelpfully tautological." *Id.* at 494, 105 S.Ct. at 3284. *See also Carter v. Berger*, 777 F.2d 1173, 1175–76 (7th Cir.1985).

In the instant case defendants argue that plaintiff lacks standing to assert a RICO claim in that plaintiff has failed to allege damage to his business. Relying exclusively on antitrust precedent, defendants contend that plaintiff's alleged lost profits represent a frustrated expectation rather than a business injury.

Before addressing this argument, it is necessary to determine whether to rely on the antitrust analogy in this case. As the above discussion of *Sedima* indicates, the controlling inquiry is whether reliance on antitrust precedent is helpful and appropriate. I find that it is.

Neither the Clayton Act nor RICO defines a business injury. The most obvious example of business injury is when an established business suffers injury. The

---

3. Since I have concluded that plaintiffs have not successfully pleaded an antitrust violation, I need not discuss the standing issues raised in the motion papers. *See supra* note 2.

courts, however, have long recognized that under § 4 of the Clayton Act, it is as unlawful to prevent a person from engaging in a business as it is to drive a person out of business. *American Banana Co. v. United Fruit Co.*, 166 F. 261, 264 (2d Cir. 1908), *aff'd*, 213 U.S. 347, 29 S.Ct. 511, 53 L.Ed. 826 (1909); *Pennsylvania Sugar Refining Co. v. American Sugar Refining Co.*, 166 F. 254 (2d Cir.1908); *Reaemco, Inc. v. Allegheny Airlines*, 496 F.Supp 546, 553 (S.D.N.Y.1980); *Waldron v. British Petroleum Co.*, 231 F.Supp. 72, 81 (S.D.N.Y.1964). The question at bar is whether this principle should apply in RICO cases as well.

The application of this principle to RICO would increase the number of plaintiffs able to claim business injury. This is consistent with Congress' intention that the RICO be construed broadly to serve its remedial purpose. *See Sedima*, 473 U.S. at 497–98, 105 S.Ct. at 3286–87. Therefore, the application of antitrust precedent in this area does not impose unnecessary and inappropriate obstacles on plaintiffs, but rather facilitates RICO's broad remedial purposes.

Antitrust precedent is helpful as well, for it provides a test for determining whether a person has been prevented from entering into business. Naturally, to claim a business injury plaintiff must demonstrate the intention and preparedness to engage in business. The courts have assessed preparedness and intent by reference to four factors: (1) the background and experience of plaintiff in his prospective business; (2) affirmative action of the part of plaintiff to engage in the proposed business; (3) the ability of plaintiff to finance the business and the purchase of equipment and facilities necessary to engage in the business; and (4) the consummation of contracts by plaintiff. *Indium Corp. of America v. Semi-Alloys, Inc.*, 611 F.Supp. 379, 385 (N.D.N.Y.), *aff'd*, 781 F.2d 879 (Fed.Cir. 1985), *cert. denied*, —— U.S. ——, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986); *Reaemco, Inc.*,

496 F.Supp. at 554; *Waldron*, 231 F.Supp. at 81–82.

■ Plaintiff's only allegations relating to a business injury are that he "has been an importer of watches including genuine Rolex watches," and that Customs seized eight watches that he was attempting to import. *See* Complaint ¶¶ 1 & 44. Plaintiff does not allege that he was an importer of watches at any time during or after the occurrence of the alleged predicate acts. Moreover, while the above quoted allegation implies that he no longer is in business, plaintiff does not allege that defendants' actions caused the demise of his business. The sole allegation of any affirmative acts taken to engage in business is the attempt to import eight watches. Eight watches, however, do not constitute a business. Plaintiff does not allege any contracts for the delivery or purchase of Rolex watches; he does not allege an ability to finance a business; and he does not allege the purchase of any equipment or facilities necessary to engage in the watch import business. Of the four relevant factors, plaintiff's allegations establish only that he has experience in the business of importing watches. While plaintiff need not allege all of the factors listed above, his current allegation is plainly insufficient to state a RICO claim based on injury to his business.

Plaintiff's failure to allege business injury, however, does not foreclose standing under RICO, for under § 1964(c) any injury to plaintiff's business *or* property provides standing. It is clear that the eight watches constitute property, and it is equally clear that the seizure of those watches is an interference with plaintiff's interest in property. Therefore, plaintiff has standing to sue under RICO for damages resulting from the alleged injury to his property. To the extent that plaintiff's claims for damages are based on business injury, however, those claims are dismissed.

Defendants argue that even if plaintiff has standing, the RICO claims should be dismissed because plaintiff has not alleged a pattern of racketeering activity as defined in § 1961(5).[4] Defendants base their

4. Defendants also contend that plaintiff's allegations of receipt and transportation of stolen property are inadequate as a matter of law, and therefore should not be considered part of a

argument on the Supreme Court's decision in *Sedima,* and on subsequent cases interpreting *Sedima.*

In oft-cited *dictum,* the Court in *Sedima* considered the statutory definition of pattern. 473 U.S. at 496 n. 14, 105 S.Ct. at 3285, n. 14. Although noting that the statute requires at least two acts of racketeering activity (i.e. predicate acts), the Court concluded that two acts will not always be sufficient to form a pattern. *Id.* Relying on the legislative history, the Court indicated that continuity plus relationship is required for a pattern. *Id.*

Defendants argue that plaintiff has not alleged the requisite continuity and relationship to support a pattern of racketeering activity. They assert that the concept of continuity plus relationship requires that the predicate acts occur in different criminal episodes. Defendants characterize the allegations in this case as amounting to a single criminal episode. Accordingly, they conclude that the RICO claims should be dismissed.

■ Plaintiff's allegations test the limits of the pattern requirement. Plaintiff specifies only three acts of mail fraud: Rolex U.S.A.'s application for recordation with Customs, dated January 17, 1983, and two subsequent letters, dated April 12, 1983 and May 11, 1984, which Rolex submitted to Customs in response to an inquiry for additional information. Complaint ¶¶ 31–33. Each one of these documents allegedly falsely denied any common ownership or control among Rolex U.S.A. and Montres Rolex. Nonetheless, recent Second Circuit cases refining the concept of continuity plus relationship indicate that plaintiff's complaint satisfies the pattern requirement.

In *United States v. Ianniello,* 808 F.2d 184 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 3229, 97 L.Ed.2d 736 (1987), the Second Circuit reconsidered its position on the pattern requirement in light of *Sedi-*

*ma.* The court reaffirmed its prior holdings. 808 F.2d at 190–192. Rejecting the Eighth Circuit's approach, which requires that the defendants engage in more than one criminal episode, the Second Circuit held that the commission of at least two acts that have the common purpose of furthering a continuing criminal enterprise is sufficient to constitute a pattern. *Id.* at 192.

The Second Circuit's most recent pronouncement on this issue is *Albany Insurance Co. v. Esses,* 831 F.2d 41 (2d Cir.1987). The contrast between *Albany Insurance* and *Ianniello* illuminates the continuity and relationship requirement. In *Ianniello* the defendants were skimming profits; hence, their enterprise had "no obvious terminating goal or date." 808 F.2d at 192. In *Albany Insurance,* by comparison, the defendants sought to recover on a fraudulent insurance claim. Since there was no threat of continuing criminal activity beyond the payment of the false insurance claim, the court found the enterprise insufficiently continuing to constitute a pattern.

The case at bar more closely resembles *Ianniello.* Plaintiffs allege a pattern of racketeering activity which is intended to falsely secure the right to bar the importation of Rolex watches. Plaintiff has not alleged that defendants sought to bar the import of Rolex watches on one occasion. The purpose of the alleged scheme is to bar the importation of Rolex watches whenever anyone other than Rolex U.S.A. attempts to import them. This scheme has no obvious terminating goal or date, but rather is intended to continue for as long as possible. Therefore, plaintiffs have alleged a pattern of racketeering activity.

### C. *Pendent State Law Claims*

Plaintiff has asserted state law claims for common law fraud, conversion and intentional infliction of emotional distress.

---

pattern of racketeering activity. As to the mail and wire fraud allegations, however, defendants have not challenged their sufficiency, and I do not perceive them to be deficient. Therefore, for the purposes of determining whether plain-

tiff has alleged a pattern of racketeering activity, I will assume without deciding that the allegations with respect to the receipt and transportation of stolen property are deficient, and I will rely solely on the claims of mail and wire fraud.

These claims fall within the Court's pendent jurisdiction. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

### 1. Common Law Fraud

■ Under New York law, plaintiff must allege the traditional five elements of fraud: (1) misrepresentation of a material fact, (2) falsity of that representation, (3) scienter, (4) reliance and (5) damages. *See Mallis v. Bankers Trust Co.*, 615 F.2d 68, 80 (2d Cir.1980), *cert. denied*, 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981). Mr. Shaw's complaint fails to make proper allegations of reliance and damage.

In paragraph 64 of the complaint plaintiff alleges that he was aware of the trademark recordation by Rolex U.S.A., and that in reliance on that recordation he refrained from importing Rolex watches. In paragraph 44, however, plaintiff alleges that he attempted to import eight Rolex watches. These inconsistencies belie any true claim of reliance. If Mr. Shaw had been relying on the recordation he would not have sought to import the eight watches. If, on the other hand, he was unaware of the recordation when he imported the eight watches, he could not have been relying on it. No matter which way plaintiff's claim is interpreted, seizure of the eight watches cannot be the result of Mr. Shaw's reliance on the recordation.

Nor does Customs' reliance support plaintiffs allegation of fraud. New York courts have consistently held that a claim of fraud will not lie when premised on the reliance of a third party. *See, e.g., Orlin v. Torf*, 126 A.D.2d 252, 254, 513 N.Y.S.2d 870, 872 (3d Dep't 1987); *Escoett & Co. v. Alexander & Alexander, Inc.*, 31 A.D.2d 791, 791, 296 N.Y.S.2d 929, 929 (1st Dep't 1969); *Ryan Ready Mixed Concrete Corp. v. Coons*, 25 A.D.2d 530, 530, 267 N.Y.S.2d 627, 629 (2d Dep't 1966).

■ Moreover, to the extent that plaintiff's claim is premised on anticipated prof-

its, his claim is barred by New York law. In the seminal case of *Reno v. Bull*, 226 N.Y. 546, 553, 124 N.E. 144 (1919), the New York State Court of Appeals held, "[t]he purpose for an action for deceit is to indemnify the party injured. All elements of profit are excluded. The true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong." This principle has been consistently applied for over seventy-five years. *See, e.g., Accusystems, Inc. v. Honeywell Information Systems, Inc.*, 580 F.Supp. 474, 483 (S.D.N.Y.1984); *AFA Protective Systems, Inc. v. A.T. & T.*, 57 N.Y. 2d 912, 913, 456 N.Y.S.2d 757, 758, 442 N.E.2d 1268, 1269 (1982); *Seiko Time Corp. v. Video Associates*, 99 A.D.2d 941, 941, 472 N.Y.S.2d 633, 634 (1st Dep't 1984). Aside from the loss of the eight watches, which cannot form the basis of a claim for fraud because of the lack of reliance, plaintiff's only claim for damages is for profits he might have earned if he were able to import Rolex watches. *See* Complaint ¶ 74. Since these damages are not recoverable under New York law, plaintiff has failed to state a claim for common law fraud.

### 2. Conversion

■ Plaintiff's claim for conversion alleges, "defendants have intentionally misappropriated and illegally taken dominion and control, of the market in the United States for watches bearing the trademark Rolex." Complaint ¶ 93. The tort of conversion is a trespass to chattels defined as the unauthorized exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights. *Employers' Fire Ins. Co. v. Cotten*, 245 N.Y. 102, 105, 156 N.E. 629, 630 (1927); *Bunge Corp. v. Manufacturers Hanover Trust Co.*, 37 A.D.2d 409, 414, 325 N.Y.S. 2d 983, 988 (1st Dep't 1971), *aff'd*, 31 N.Y. 2d 223, 335 N.Y.S.2d 412, 286 N.E.2d 903 (1972). A market, which plaintiff claims was converted, does not conform to the concept of chattel, property or goods. Since plaintiff has failed to allege the exist-

ence of a chattel over which defendants have exercised dominion, plaintiff has failed to state a cause of action in conversion.

### 3. *Intentional Infliction of Emotional Distress*

■ The basis for plaintiff's claim of intentional infliction of emotional distress ("IIED") is that Rolex U.S.A.'s trademark recordation caused his federal indictment. This is insufficient to state a claim for IIED.

In *Fischer v. Maloney*, 43 N.Y.2d 553, 557, 373 N.E.2d 1215, 1217, 402 N.Y.S.2d 991, 992–93 (1978), the Court of Appeals set forth the elements of a claim for IIED:

> An action may lie for intentional infliction of severe emotional distress "for conduct exceeding all bounds usually tolerated by decent society" (Prosser, Torts [4th ed.], § 12, p. 56). The rule is stated in the Restatement, Torts 2d, as follows: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress" (§ 46, subd. [1]; see for one aspect Comment d: "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community").

Plaintiff must show specific intent, *see Garland v. Herrin*, 724 F.2d 16, 21 (2d Cir.1983), and outrageous conduct. *See, e.g., Murphy v. Murphy*, 109 A.D.2d 965, 966, 486 N.Y.S.2d 457, 458–59 (3d Dep't 1985) (defendant conducted a "deliberate and malicious campaign of harassment," assaulted common law wife to force her to leave house, threatened physical abuse over a period of years, killed her pet goose, and placed all of her belongings out of the house they had jointly built). Plaintiff alleges neither. Consequently, his claim for IIED is dismissed.

### D. *Rule 11 Sanctions*

■ Defendant has also moved for an award of attorney's fees pursuant to Rule 11, Fed.R.Civ.P. While it is true that this Court has the discretion to award a prevailing party attorney's fees in an action that is "unreasonable, frivolous, meritless or vexatious," *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), I decline to do so here since there is no indication that the plaintiff or his attorney acted in bad faith.

### III. *Conclusion*

For the foregoing reasons, defendants' motion to dismiss plaintiff's federal claims for relief under the antitrust laws, and his state law claims for fraud, conversion, and intentional infliction of emotional distress is granted. The motions to dismiss the RICO claims, and the motion for Rule 11 sanctions are denied. Insofar as the RICO claims seek damages based on injury to plaintiff's business, however, the motion to dismiss is granted.

Defendants are directed to serve their answer within ten days of receiving notice of this decision.

SO ORDERED.