JOPLIN ENTERPRISES, an Arizona partnership, Strong Arm Music, a division of Joplin Enterprises; and Texas Lion Productions, a New York joint venture, Plaintiffs,

v.

Jimmy ALLEN, and Gaye Anderson, individually and the marital community composed thereof, and d/b/a the New Orleans Performance Hall and the New Orleans Restaurant; and Susan Ross, Defendants.

No. C91–1035C.

United States District Court, W.D. Washington, at Seattle.

June 2, 1992.

Kathryn L. Barrett and Lynne Greenberg of Skadden, Arps, Slate, Meagher & Flom, New York City, and Lori Salzarulo and Gary J. Strauss of Garvey, Schubert & Barer, Seattle, Wash., for plaintiffs.

Alice D. Leiner, David J. Burman and Gregory J. Wrenn of Perkins Coie, and Melvyn J. Simburg of Simburg, Ketter, Sheppard & Purdy, Seattle, Wash., for defendant Susan Ross.

Paul Gillingham, Seattle, Wash., for defendants Jimmy Allen and Gaye Anderson.

Rebekah R. Ross of Williams, Kastner & Gibbs, Seattle, Wash., for amici curiae American Civ. Liberties Union, American Civ. Liberties Union of Washington, and Washington Coalition Against Censorship.

## REVISED OPINION AND ORDER

COUGHENOUR, District Judge.

### I. Introduction

This matter is before the court on (1) defendants' motion for partial judgment on the pleadings under Fed.R.Civ.P. 12(c), (2) defendants' motion for a declaratory judgment under Fed.R.Civ.P. 57, and (3) plaintiffs' motion for judgment on the pleadings under Fed.R.Civ.P. 12(c).

### II. Background

*Janis* is a two-act play about Janis Joplin, a renowned rock and blues singer who, sadly, died young in 1970. Act I fictionally portrays Ms. Joplin's experiences over the course of a day previous to an evening's concert performance. Its forty-six page script focuses on visions of artistic inspiration and their colloquies with Ms. Joplin. Act I contains only one song. Defendants concede, for the purposes of their motions, that Act II simulates an evening's concert performance by Ms. Joplin.

Plaintiffs believe that the play violates both copyright law and Janis Joplin's right of publicity. They demanded that *Janis* close, and, when the production did not cease, they filed this lawsuit. *Janis* ended its production run shortly thereafter.

### III. Discussion

#### (1) Defendants' Motions

Defendants move for a judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), dismissing plaintiffs' second cause of action, infringement of the right of publicity. They also move, pursuant to Fed.R.Civ.P. 57, for a declaratory judgment that *Janis* is not subject to any state law protecting proprietary interests in the names and likenesses of public figures.

In ruling upon defendants' motions, the court must first determine which law applies to the issues presented therein. Washington's choice of law rules apply here. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

■■■ The right of publicity is a "property right." *Acme Circus Operating Co., Inc. v. Kuperstock*, 711 F.2d 1538, 1541 (11th Cir.1983). *Accord Rogers v. Grimaldi*, 875 F.2d 994 (2nd Cir.1989); Cal.Civ. Code § 990(b) (West Supp.1992) ("the rights recognized under this section are property rights"). Janis Joplin was domiciled in California and her right of publicity descended to her devisees in California. Thus, under Washington's choice of law rules, Washington looks to the law of California to determine whether the allegedly infringed property right exists at all in this case. James A.R. Nafziger, *Conflict of Laws: a Northwest Perspective* 187 (1985); *See also In re Grady's Estate*, 79 Wash.2d 41, 483 P.2d 114 (1971). If a right of publicity exists in California, Washington then applies the law of the state having the

most significant relationship to this conflict to determine whether that right has been tortiously infringed. *Bush v. O'Connor*, 58 Wash.App. 138, 143, 791 P.2d 915 (1990).

 California Civ.Code Section 990 delineates California's statutory right of publicity for deceased personalities. It applies by its language and by legal authority only to the exclusively commercial use of Ms. Joplin's persona in merchandise, advertising or endorsements. *Cf. Leidholdt v. L.F.P. Inc.*, 860 F.2d 890, 895 (9th Cir.1988) (applying this proposition to living celebrities' rights of publicity under similar California and New York statutes), *cert. denied*, 489 U.S. 1080, 109 S.Ct. 1532, 103 L.Ed.2d 837 (1989). Indeed, by its plain language the statute specifically excepts from its purview "a *play*, book ... [or] *musical composition....*" (emphasis added). Cal.Civ.Code § 990(n)(1). Although a common law right of publicity also exists in California, that right of publicity is not descendible and did not pass to plaintiffs. *Guglielmi v. Spelling–Goldberg Prod.*, 160 Cal.Rptr. 352, 353, 603 P.2d 454, 455 (1979).

 As a matter of law, Acts I and II of *Janis* must be viewed together in the context of plaintiffs' right of publicity claims. Plaintiffs have attempted to pursue their claims against Act II of *Janis* as if Act I did not exist or could be analyzed separately. Yet they admit that "[a]s written and produced [*Janis*] occurs in two acts." They also admit that Act I is "a protected form of expression." Plaintiffs' Memorandum in Opposition at 14. In fact, plaintiffs do not argue, nor can they, that if *Janis* is analyzed as a whole it is not a play subject to the provisions of Cal.Civ.Code § 990.

California Civ.Code § 990 clearly contemplates examining the use of a deceased personality's name, voice, etc., in terms of the total context in which it appears. Where a use is for the purpose of advertising goods or services, it is prohibited. Identical use in the context of a play is protected. To analyze Act II of *Janis* out of context would destroy the statutory exemption.

Moreover, even cases not decided under California law, which are cited by plaintiff in support of its right of publicity claim, stand for the proposition that a theatrical production must be examined in its entirety. For example, both *Estate of Presley v. Russen*, 513 F.Supp. 1339 (D.N.J.1981), and *Apple Corps v. Leber*, 229 U.S.P.Q. 1015 (Cal.Super.Ct.1986), indicate that the right of publicity claim must be applied to *Janis* as a whole.

Allowing plaintiffs to assert a right of publicity only in a severable Act II would legitimate right of publicity claims based, for example, on a photograph in the back of a stage set, a comedian's imitation of a famous figure, or a celebrity's likeness on the cover of a biography. The right of publicity cannot rationally reach so far. Therefore, Act II of *Janis* occurs in the context of Act I and constitutes only a portion of the entire play. Under California law, plaintiffs cannot state a legally cognizable right of publicity claim in this case.

The court notes that if Washington law applied to the issue of whether plaintiffs' right of publicity claim is colorable at law, its holding would be the same. Neither Washington's legislature nor its courts have addressed the right of publicity issue. Therefore plaintiffs have neither a right of publicity nor a remedy for tortious interference with that right under Washington law. This court is not willing to extrapolate, from Washington's recognition of a right to privacy, a descendible right of publicity applicable to this case or a remedy for interference with such a right under Washington law, especially given the fact that the Washington State Constitution places an even higher value upon the principle of free speech than the Federal Constitution. *See, e.g., Bering v. Share*, 106 Wash.2d 212, 721 P.2d 918 (1986) (Article 1, Section 5 of the Washington State Constitution provides greater protections to the rights of free speech than afforded under the First Amendment); *O'Day v. King County*, 109 Wash.2d 796, 749 P.2d 142 (1988) (Washington's overbreadth analysis less tolerant than federal overbreadth analysis); *cf. Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) (determining that if Oregon recog-

nized the right of publicity, the right would be limited to control of commercial advertisements for the sale of goods and services, in part because the free speech clause of Oregon's Constitution provides broader free speech rights than the First Amendment).

"In considering a rule 12(c) motion, the court must accept as true all of the well-pleaded facts in the complaint and may not dismiss the action unless the court is convinced that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bloor v. Carro, et al.*, 754 F.2d 57 (9th Cir.1985) (internal quotations and citations omitted). As the court has indicated, no issues of material fact can exist in this case which could alter a judgment against plaintiffs on the right of publicity issue.

Finally, this court declines defendants' invitation to depart from the usual rule that it should avoid direct constitutional adjudication whenever possible. *County Court of Ulster County v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979) (courts have a strong duty to avoid constitutional issues that need not be resolved in adjudicating a case). The court notes, however, the clear direction in which constitutional law points. In a case different from this one only in that it involved a book and not a play, a New York court held that "[t]he protection of the right of free expression is so important that we should not extend any right of publicity, if such exists, to give rise to a cause of action against publication of a ... work about a deceased person." *Frosh v. Grosset & Dunlap, Inc.*, 75 A.D.2d 768, 427 N.Y.S.2d 828, 829 (App.Div.1980). This court agrees with the reasoning of the *Frosh* opinion.

Defendants' Motion for Partial Judgment on the Pleadings is GRANTED. Plaintiffs' second cause of action, infringement of the right of publicity, is DISMISSED. Defendants' Motion for Declaratory Judgment is DENIED.

### (2) Plaintiffs' Motion

■ Plaintiffs move for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), requesting that the court dismiss defendants' antitrust counterclaims. Because defendants do not allege *per se* violations of either § 1 or § 2 of the Sherman Act, their claims must be evaluated under the rule of reason. *Cascade Cabinet Co. v. Western Cabinet & Millwork*, 710 F.2d 1366, 1370 (9th Cir.1983). Market definition is "essential" to claims under § 1 and § 2 in which the rule of reason is applied. *Gough v. Rossmoor Corp.*, 585 F.2d 381, 389 (9th Cir.1978).

■ The relevant product market includes "the pool of goods or services that enjoy reasonable interchangeability of use and cross-elasticity of demand." *Id.* (quoting *Oltz v. St. Peter's Community Hosp.*, 861 F.2d 1440, 1446 (9th Cir.1988)). The two factors to focus upon are (1) reasonable interchangeability of the products, and (2) the purchaser's willingness to substitute one commodity for another. *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 393–404, 76 S.Ct. 994, 1006–12, 100 L.Ed. 1264 (1956).

A substantial body of case law indicates that the market proposed by defendants is too narrow to support a cause of action. For example, in cases involving relatively narrow markets, courts have held that the relevant market is not so limited as to include just one product. *Theatre Party Associates, Inc. v. Shubert Organization, Inc.*, 695 F.Supp. 150 (S.D.N.Y.1988) (proposed market for *Phantom of the Opera* rejected). *See also Belfiore v. New York Times Co.*, 826 F.2d 177, 180 (2d Cir.1987) (proposed market for *The New York Times* rejected); *Seidenstein v. National Medical Enterprises, Inc.*, 769 F.2d 1100, 1106 (5th Cir.1985); *Shaw v. Rolex Watch, U.S.A., Inc.*, 673 F.Supp. 674 (S.D.N.Y.1987) (proposed market for Rolex watches rejected); *Disenos Artisticos E Industriales, S.A. v. Work*, 676 F.Supp. 1254 (E.D.N.Y.1987) (proposed market for Lladro figurines rejected). In these cases, courts have granted motions to dismiss, thus preventing the matter from going to the jury.

In *Theatre Party Assoc.*, the court rejected a proposed market consisting of tick-

ets for *Phantom of the Opera*, noting that "[p]laintiff ha[d] failed to explain why other forms of entertainment, namely other Broadway shows, the opera, ballet or even sporting events are not adequate substitute products." *Theatre Party Assoc.*, 695 F.Supp. at 154–55. Similarly, here, defendants cannot rationally explain why their market does not include live performances of dramatic plays or concerts, other depictions of the lives of female rock and blues vocalists, or movies and plays about historically significant musicians of the sixties. Therefore, Plaintiffs' Motion to Dismiss Defendants' Antitrust Counterclaims is GRANTED. Defendants' counterclaims under the Sherman Act are DISMISSED, for failure to plead a relevant market in which plaintiffs have, or could have, monopoly power.